724    <sup>..J</sup> KEYES *v.* L. Y. G. W. & W. Co.    [Sup. Ct.

[No. 6659.]

## JAMES H. KEYES *v.* LITTLE YORK GOLD WASHING AND WATER COMPANY.

EQUITABLE RESPONSIBILITY.—There is no principle of equity which would make a person responsible for a wrong that he has neither done nor threatened to do.

SAME — MISJOINDER AS DEFENDANT. — If the acts and threats of a person taken by themselves do not make a case which would support an action against him, his mere joinder in an action as a defendant with others who have severally, and without concert or collusion with him, done similar acts or made similar threats, will not create a liability on his part.

JOINDER OF PARTIES FOR TORT.—The cases governing the joinder of parties considered, and *held*, that where an action for a tort is brought against several co-defendants, it is essential that the wrong complained of be joint.

APPEAL from the District Court of the Tenth Judicial District, Sutter County.

Defendants appealed. The facts are stated in the opinion.

*S. M. Wilson, W. C. & I. S. Belcher, J. K. Byrne,* and *A. B. Dibble,* for Appellants.

This action is one in equity to enjoin a nuisance. The usual action in such cases is one at law for damages for the injuries already committed, joined with a demand for ancillary relief by way of injunction, if the injury be a continuing one, as in the case of *Natoma W. & M. Co.* v. *Clarkin,* 14 Cal. 548. But this action, though based on the same facts that would have been a ground for an action at law for damages, seeks only an injunction; still, it is in its essential elements based on tort. Now, at law merely for damages, the plaintiff could not proceed against more than one defendant, without showing some concert of action or joint movement by all of the defendants. No mere question of pleading is raised; but conceding that the pleadings are sufficient to admit of the proof, we contend that proof of a joint or collusive action on the part of all defendants is requisite. Concert of action is indispensable to a joint liability in tort. A man may be beaten by three different persons on the same day, but at separate hours, and without any combination, conspiracy, or concert of action between them. In such case a

joint action against the three would fail. The fact that each contributed to his final condition at night would not vary the rule. It is true that the first beating made him more susceptible of injury by the second, and the second prepared him for an almost fatal result by the last, yet the torts are entirely separate and distinct, and on no principle could they be the subject of a joint action against the three. It would be the same as to different trespasses on the same land, and the same rule would apply. Concert of action, conspiracy, or collusion would be an essential element of a joint action.

Take also a case of four different soap factories in one neighborhood, all affecting one man's dwelling. There could be no joint action at law for damages. Take the cases of the dogs of different owners joining in a night expedition against sheep; or the cattle of different owners making a common invasion of neighboring grounds: in none of these cases can a joint action be maintained against the different owners of the dogs or cattle. A man is only responsible for his own torts, or of those acting for him, or in concert with him. (*Woods* v. *Sutcliffe*, 2 Sim. N. S. 166; *Rochdale Canal Co.* v. *Kirk*, 2 Sim. N. S. 78; *Ritchie* v. *Dorland*, 6 Cal. 33; *Winans* v. *Christy*, 4 Cal. 70; *Judson* v. *Molloy*, 40 Cal. 299; *Little Schuylkill R. R. & Gas Co.* v. *Richards, Administrator*, 57 Penn. St. 142; Hilliard on Torts, 441; Addison on Torts, 106–7, 159; *Partenheimer* v. *Van Orden*, 20 Barb. 479; *Buddington* v. *Shearer*, 20 Pick. 477; *Auchuntz* v. *Haen*, 1 Denio, 495; *Van Steinberg* v. *Tobias*, 17 Wend. 562; *Adams* v. *Hall*, 2 Vt. 9; *Russell* v. *Tomlinson*, 2 Conn. 206; *Williams* v. *Sheldon*, 10 Wend. 654; *Bard* v. *Yohn*, 2 Casey, 482; *Klanden* v. *McGrath*, 11 Ibid. 128.)

The action, though in equity, is based on the tort, and the plaintiff cannot escape the rule we have invoked by a mere change of the form of the action from law to equity. (See Dicey on Parties, 431, *et seq.*; see, also, *Mazetti* v. *Williams*, 1 Barn. & Ad. 541 [415]; Sedgw. Lead. Cases Damages, 433.)

The rules in equity on the subject of joining parties to avoid litigation do not apply to a case like this. No defendant here has any interest in the tort of another defendant. That he desires or is about to commit a similar tort does not give him

either an interest in the subject-matter or the object of the action. (See Story, Eq. Pl. 277–8.)

In *Dilley* v. *Doig*, 2 Ves. Jr. 486, it was held that several booksellers selling the same spurious edition of a copyrighted book could not be enjoined in one suit. (See, also, *Saxton* v. *Davis*, 18 Ves. 80; *West* v. *Randall*, 2 Mason, 181; *Fellows* v. *Fellows*, 4 Cow. 682; *Brinkerhoff* v. *Brown*, 6 J. C. R. 139; *Boyd* v. *Hoyt*, 5 Paige, 65.)

The same rule prevails in admiralty. (*Thomas* v. *Lane*, 2 Sum. 2.)

*Geo. Cadwalader, P. Van Clief,* and *J. H. Craddock*, for Respondent.

This case belongs to that class of cases in equity in which a general right of the plaintiff is invaded or injured by "several acts of the same character," committed by several persons, without privity or concert of action, but all of which contribute "in the same manner" to the injury complained of; in which class of cases it is proper to join as defendants all persons thus contributing to the injury. Of this class of cases, the following are relied upon by respondent: *Mayor of York* v. *Pilkington*, 3 Atk. 282; *Whaley* v. *Dawson*, 2 Sch. & Lef. 370; *Brinkerhof* v. *Brown*, 6 John. Ch. 149; *New York & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. Rep. 603; *McLean* v. *Lafayette Bank*, 3 McLean, 415; *Gaines* v. *Chew*, 2 How. (U. S.) 642; *Dimmick* v. *Rixby*, 20 Pick. 377; *Central P. R. R. Co.* v. *Dyer*, 1 Saw. 641; *Wilson* v. *Castro*, 31 Cal. 420.

In some of them the injuries done or threatened to plaintiff's general right consisted of distinct trespasses on the plaintiff's land by several defendants, accompanied with a claim of right to do the acts complained of; in others, of distinct frauds committed by several defendants; and in others, of distinct adverse claims of some right in or title to plaintiff's property, or the products or profits thereof. But in none of them was there privity or concert of action between all the defendants. *Whaley* v. *Dawson* was distinguished from the cases above cited by the fact that the bill of complaint did not allege a sin-

gle general right in the plaintiff which was inferred or threatened by both defendants.  As against one defendant, the plaintiff claimed a right to partition a certain tract of land.  As to the other, he claimed a right to set aside a lease for a distinct portion of said land, on the ground of fraud.  Neither defendant was interested in contesting the right asserted against the other, and Lord Redesdale said in that case that he considered the test to be whether there was a " general right in the plaintiff covering the whole case, although the rights of the defendants may have been distinct."

The copyright case of *Dilly* v. *Doig* has been disregarded, and not followed either in England or the United States, except in copyright or patent right cases.  Chancellor Kent declined to follow it in *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 149.  In *McLean* v. *Lafayette Bank*, 3 McLean, 415, Judge McLean held it to be irreconcilable with *Mayor of York* v. *Pilkington*, and followed the latter case.  The Supreme Court of the United States did the same in *Gaines* v. *Chew*, 2 How. 642.

Where several equitable causes of action are joined—and it will not be questioned that such causes may be properly joined under some circumstances — every person connected with or affected by either of the causes of action so joined is a proper party defendant; and all persons whose interests are sought to be directly affected by the relief sought on either cause of action, although not affected by the others, are necessary parties defendant, whom the Court, of its own motion, will order to be made such.  Suppose A holds two mortgages executed by B, at different times on different tracts of land, to secure distinct debts due from B to A.  Is there any question that A has two equitable causes of action against B? or that they may be joined in one action to foreclose both mortgages?

Suppose, again, that C has a subsequent mortgage on one of said tracts of land alone, and D has a subsequent mortgage on the other tract alone.  Are not C and D proper parties defendant to A's action to foreclose both mortgages?  This supposed case fairly illustrates every case in which two or more equitable causes of action may be joined.  The truth is, as claimed by plaintiff's counsel, that the complaint states but one cause of

action affecting all the defendants, as in the cases relied upon by respondent, and above cited.

In none of these cases did the Courts decide or admit that there was more than one cause of action in equity. In all of them, as in this case, a single general right of the plaintiff was infringed or threatened by several persons without concert of action. To vindicate and protect this general right, the plaintiff was allowed to join, as defendants, all the persons infringing or threatening this general right.

In most of those cases, the effect of each defendant's act, done or threatened, was capable of being distinguished from the effects of the acts done or threatened by the other defendants. In the fishery case, the number or quantity of fish taken by each defendant might have been ascertained, and the plaintiff prayed for a discovery for that purpose; but in this case the effect of the acts of the several defendants in dumping tailings into Bear River are so blended as to be absolutely indivisible and undistinguishable.

The grains of sand deposited on plaintiff's land by one defendant cannot be distinguished from those deposited by the other defendants. They are mingled together near the place where they are dumped into the river, and in that condition travel down the stream a distance of more than forty miles, when they jointly and inseparably invade plaintiff's general right to the use and comfortable enjoyment of his land, and threaten a total destruction of such use and enjoyment.

This state of facts, as before remarked, constitutes but a single equitable cause of action against all the defendants, and it makes no difference that they never agreed to join in the wrongful acts, or that they may have different defenses. The rules governing the joinder of parties defendant in equity apply alike to all classes of equity cases; and it makes no difference whether the complaint is in the nature of a bill of peace, *quia timet*, foreclosure, or to enforce specific performance of a contract; and so far as equity assumes jurisdiction to remedy torts, the rules as to parties defendant are the same as in cases *ex contractu*.

In all cases every person, to be directly affected by the relief

sought, must be made a party defendant whether there is any privity or other relation between him and other defendants or not. A party defendant is improperly joined only when he is not directly interested in the subject or object of the action, and cannot be affected by the judgment; whereas, the joinder of different causes of action is only objectionable on the ground of incongruity and consequent inconvenience of trying them together.

By the COURT:

The complaint sets forth that the plaintiff is the owner of certain described premises known as bottom land, situate in the valley, upon the banks of Bear River, about ten miles from where that stream debouches into the Sacramento Valley, and midway between that point and the mouth of the river ; that the defendants are miners severally engaged in hydraulic mining at points high up on Bear River and its tributaries—the several mining properties of the defendants lying within a radius of seven miles upon the hill-tops adjacent to the river, and being severally wrought and carried on by the respective defendants, and that the several dumps used by the defendants respectively in their mining pursuits are some of them in the bed of the river, others in the beds of steep ravines and gulches immediately contiguous to and leading into the bed of the river and its tributaries; that the tailings of the several mining claims deposited on these dumps are swept down the river by the force of the current until they reach the lands of the plaintiff below, upon which they are deposited, and which they cover so as to destroy the value of the said lands. The prayer is that an injunction issue enjoining the defendants from depositing the tailings and débris of their several mining claims so that they reach the channels of the river, etc.

The defendants appeared to the action, and filed a demurrer to the complaint upon several grounds—and, among others, upon the ground that there is a misjoinder of parties defendant, in that it did not appear by the complaint that the defendants jointly committed any of the acts complained of, or are acting

therein in concert or by collusion with each other, but that, on the contrary, it did appear by the complaint that the defendants had no interest in common in the subject-matter of the suit, but were acting severally and without any joinder or co-operation on the part of the defendants, or any of them. The demurrer was overruled by the Court below, and the propriety of its action in that respect is brought in question by this appeal.

An injunction is granted when the relief sought consists wholly or in part of restraining the commission or continuance of acts being done or threatened, or when the commission or continuance of acts during litigation will produce irreparable injury, or render a judgment in plaintiff's favor ineffectual. (Code of Civil Procedure, sec. 526.) The injunction ordered at the final hearing by the Court below was not auxiliary to any other provision of the decree, or added to render some other final order more effective. It was the only decree sought by plaintiff, and is the very most that the allegations of his bill would have entitled him to had the defendants been charged with co-operation and a common design in doing that which each threatened.

There are, indeed, recitals in the complaint alleging plaintiff to have already sustained damages, but no relief is sought upon them as allegations constituting the basis for a decree. They are rather in the nature of statements of evidence tending to sustain the averments that like damages will occur in the future, unless defendants are restrained. In the case of a demurrer for misjoinder, (even had damages for past injuries been demanded in this case) no judgment for damages could have been rendered against the defendants *jointly*, because they are charged each to have committed a tort severally; and several judgments for damages could not have been rendered against each defendant, in the same action, for such judgments would have demonstrated a misjoinder.

No damages are claimed in the prayer for judgment or in the "points" of counsel. The wrong complained of is that each of the defendants, acting for himself, and not in collusion or combination with any other, threatens to continue to deposit the tailings from the working of the mine in such position, on

or adjacent to his own premises, as that, from natural causes, they will flow down or be forced down upon plaintiff's farm.

If a nuisance was created by the exposure of the dumps to the action of the waters of Bear River and its tributaries, a nuisance was committed by each of defendants, when he—disconnected from the others—made or threatened such deposit; or, if it be said that the matter of the *reasonable use* of the stream can enter into the inquiry, there could be no nuisance by any of the defendants who had made only a reasonable use.

In either view of the case, there is a misjoinder of parties defendant. The bare statement would seem to prove the proposition, since the very essence of the objection of misjoinder of a defendant with others is that he is not connected with or affected by the single cause of action, if there is but one, or that he is not connected with or affected by one or more of several separate and distinct causes of action, if several are alleged. If any one of these defendants was liable to be enjoined, he could have been enjoined in a separate suit, the subject-matter of such suit being the alleged threatened wrong. If any one of the defendants is not liable to be enjoined in a separate suit, he cannot be made liable in an action like the present; for there is no principle of equity which would make a man responsible for a wrong which he has neither done nor threatened, merely by joining him with other defendants who may independently have threatened a similar wrong.

Several cases were cited by counsel for respondent which it was claimed would sustain the joinder of the defendants in this action, but an examination will clearly distinguish them from the present. *Mayor of York* v. *Pilkington*, 1 Atk. 282, was a bill of peace to prevent a multiplicity of suits. In a certain sense, all bills of peace are intended to prevent multiplicity of suits, but it is a *non sequitur* to assert that wherever the result of assumed jurisdiction by a Court of Equity will relieve the plaintiff of the inconvenience of bringing several separate actions at law or suits in equity, the complaint is to be termed a bill of peace. In *Mayor* v. *Pilkington*, a bill was *brought to quiet the plaintiffs in a right of fishery* in the River Ouse, of which *they claimed the sole fishery* " of a large tract " against

the defendants, who, it was suggested by the bill, *claimed several rights*, either as lords of manors or occupiers of adjacent lands. The main question was whether, in view of the fact that there was no privity between the defendants, the bill could be maintained. Holding the affirmative on this proposition, the Court of Chancery was authorized to retain the cause for other purposes. But the gravamen of the bill was not that the defendants were several and separate trespassers, (the view upon which the demurrer was sustained at the first argument) but was that the plaintiff had an exclusive right against which defendants were asserting adverse rights. The proceeding was analogous to our action to quiet title. The present case more resembles *Dilley* v. *Doig*, 2 Vesey Jr. 486, in which the proprietor of a copyright sought to restrain in the same suit several and independent infringements of his right by different persons. In that case there was no allegation in the bill of a claim of right on the part of the defendants to sell copies of the spurious edition of the book, and, from the nature of the circumstances detailed, there could have been no such allegation. The defendants were alleged to be severally wrong-doers without any combination. The Lord Chancellor said: "The right against the different booksellers is not joint, but perfectly distinct; there is no *privity*." The subject-matter of the bill was a wrong done by each of the booksellers; its object was not to obtain a final determination that the plaintiff had the exclusive right, and that the defendants had no right, (for it was not asserted that they claimed any) but, as in the present case, simply to enjoin wrongs threatened by the defendants severally, and not *jointly*. In *Whaley* v. *Dawson*, 2 Schoales & L. 367, a demurrer was *sustained*, "for that it appeared by said bill that the same was exhibited against defendants and one Michael Carraher for several and distinct matters and causes, that have no relation or dependencies on each other." In *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 137, Chancellor Kent remarks: "There was a series of acts on the part of the persons concerned in the 'Genesee Company,' all produced *by the same fraudulent intent*, and terminating in the deception and injury of the plaintiff. The defendants performed different parts in the same drama; but

it was still one piece—one entire performance, marked by different scenes." All the defendants, (except such as were parties necessary to the final determination of the issues between plaintiffs and those who had taken part in the fraud) had been actors in a greater or less degree in carrying out the common fraudulent design. The case would have been more analogous to the present, if here the several defendants had been charged with threatening the injury in pursuance of a purpose adopted by a common agreement. It is claimed that *New York and New Haven R. R.* v. *Schuyler*, 17 N. Y. 603; 34 N. Y. 45, is strongly in point. But that was a case where the plaintiffs claimed a right to have certain stock cancelled as having been fraudulently issued, and the defendants, as the complaint alleged, "all claimed rights;  *  *  *  all asserted a claim upon the company in some form." (17 N. Y. 594–5.) The case was determined upon its analogies to a bill to *quiet title* and *remove a cloud*. The learned Judge likened it to a case of an individual clothed with the legal title to the railroad property, receiving its gross earnings for the purpose of dividing the net profits among a large number of individuals whose rights were evidenced by certificates of stock. In such case, if a new class should come forward claiming the same rights, and presenting instruments of the same kind as the certificates, bearing on their face all the evidences of genuineness, but in fact unauthorized and spurious, it would be the right and duty of the *legal owner*, (upon settled principles of equity) to call the false claimants into Court, in order to remove the cloud upon the equitable interest of those whom he represented. (Ibid. 598.)

It is unnecessary to dwell upon the analogies between the cases of *N. Y. and N. H. R. Co.* v. *Schuyler*, and the *Mayor of York* v. *Pilkington*, or on the very marked differences between the former and the case at bar. In the Court of Appeals, 34 N. Y., the complaint was expressly characterized as " a bill of peace, to quiet titles, settle rights, and prevent a multiplicity of suits." An examination of *Thorpe* v. *Brumfit*, Law R. Ch. App. cases, vol. 8, shows that the parties all had a contract relation to each other, by reference to which their respective rights were to be determined ; and further, that no question of

joinder was raised, but, on the contrary, the defendants *all answered together*, insisting that they all had a certain right of way, to be exercised in a reasonable and proper manner (p. 653). In *People* v. *Morrill*, 26 Cal., the objection was that there was a misjoinder of plaintiffs. It was held, (and apparently admitted) that all the plaintiffs were properly joined, so far as relief by cancellation of the patent was concerned, and it was said that the demurrer should be overruled because too general.

We think the distinction between the case at bar and the other American cases cited by the respondent—*Gaines* v. *Chew*, 2 How. 619, amongst them—is equally susceptible of explanation. With respect to the Scotch cases, it is enough to say that, under the system of law which obtains in Scotland, it would appear that parties and causes of action may be united in a manner not permissible in countries where the common law prevails; the inconveniences and evils resulting from the joinder of parties without community of interest being there avoided by a system which allows the " conjunction " of causes and the submission of special issues to the triers of fact.

At *law*, where an action for tort is brought against several co-defendants, it is essential that the wrong complained of be joint. (Dicey on Parties, 449.) This rule is thoroughly understood, and is not disputed. If there are any exceptions in equity they have not been called to our attention. We are convinced that none can be found which will authorize the joinder of defendants attempted in the proceeding before us. We have no doubt that the objections to the complaint above considered could properly be presented by a demurrer on the ground of misjoinder of parties defendant.

Judgment and order reversed and cause remanded, with directions to the Court below to sustain the demurrer to the complaint. Remittitur forthwith.