[No. 8,996. In Bank.—November 25, 1884.]

THE PEOPLE OF THE STATE OF CALIFORNIA, RE-SPONDENT *v.* GOLD RUN DITCH AND MINING COM-PANY, APPELLANT.

PUBLIC NUISANCE—NAVIGABLE STREAMS.—The navigable streams of the State are public highways, and are for the use of the people of the State. Any unauthorized obstruction or interference with these streams by a private individual is a public nuisance, which may be enjoined, upon application of the Attorney General in the name of the people of the State.

ID.—CUSTOM.—A private individual cannot acquire by custom a right to discharge debris into a navigable stream, so as to destroy or materially interfere with the use of the stream for purposes of navigation.

ID.—PRESCRIPTION—CONTINUING NUISANCE.—The right to continue a public nuisance cannot be acquired by prescription.

ID.—PRACTICE—PARTIES—JOINT AND SEVERAL ACTIONS.—In an action to abate a public nuisance, all persons engaged in the wrongful acts may be sued jointly or severally.

HYDRAULIC MINING—DEBRIS—PUBLIC NUISANCE—PARTIES—INJUNCTION.—The defendant was a ditch and mining corporation, owning water ditches and mines, and working its own mines by the hydraulic process. The effect of its work was to discharge into the American river—an unnavigable stream —large quantities of gravel, sand, and other refuse material. Other mines than those of the defendant were worked by the hydraulic process, and the debris from these mines was also deposited in the American river. All of this refuse material was carried down the stream by the force of the current, and deposited in the Sacramento river, a navigable stream, of which the American river is a tributary. The result was to fill the channel of the Sac-ramento river so as to materially impede navigation, and to cause overflows and a deposit of debris upon the adjacent lands. *Held*, (1.) That these acts of the defendant constituted a public nuisance, which may be enjoined in an action instituted by the attorney general in the name of the people of this State. (2.) That the action could be maintained against the defendant, without joining the other persons who contributed to the injury.

APPEAL from a judgment of the Superior Court of the coun-ty of Sacramento, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*James K. Byrne, W. C. Belcher, S. M. Wilson, Wm. T. Wallace,* and *Stewart & Herrin,* for Appellant.

The alleged cause of action is for injuries to land owned by citizens, which do not constitute a public nuisance. (Bacon's Abridgment, p. 223 ; Adams' Equity, 7 Am. ed. 210 ; 3 Green-leaf on Ev., § 186 ; *King* v. *Morris & Essex R. R. Co.,* 18 N. J. Eq. 397 ; *Stetson* v. *Faxon,* 19 Pick. 147 ; 4 Black. Com. 166, etc.; 1 Russell on Crimes, 435, etc.; 3 Black. Com. 216;

Cooley on Torts, 565, etc.; *Yolo County* v. *Sacramento*, 36 Cal. 193 ; *People* v *Albany & Susquehanna R. R. Co.*, 57 N. Y. 161 ; *People* v. *Stratton*, 25 Cal. 242; *Mississippi R. R. Co.* v. *Ward*, 2 Black. 485.)

The attorney general had no authority to bring the action. (Political Code, §§ 470, 601, 2546 ; Code Civ. Pro., §§ 803, 804, 1272; Civil Code, §§ 382, 1405; *People* v. *Stratton*, 25 Cal. 242.)

There was no finding that the defendant materially contributed to the injury complained of. (*Paulson* v. *Nunan*, 54 Cal. 123; *Byrnes* v. *Claffey*, 54 Cal. 155; *Glascock* v. *Ashman*, 52 Cal. 420 ; C. C. P., § 463 ; *Green* v. *Palmer*, 15 Cal. 411; *Queen* v. *Russell*, 77 Eng. Com. Law. Rep., 3 E. & B. 942 ; *Rex* v. *Tindall*, 33 Eng. Com. Law Rep., 6 Adolph. & Ellis, 143 ; *St. Helena Smelting Co.* v. *Tipping*, 11 House of Lords Cases, 642; *Wheeler* v. *City of Worcester*, 10 Allen, 591.)

The defendant is not liable for the acts of others, but only for his own acts. (*Little Schuylkill Navigation Co.* v. *Richards, Administrator*, 57 Pa. St. 142; *Chipman* v. *Palmer*, 77 N. Y. 51 ; *Keyes* v. *Little York*, 53 Cal. 724; *Sellick* v. *Hall*, 47 Conn. 260 ; *Woodruff* v. *North Bloomfield G. M. Co. et al.*, 8 Saw. 628 ; *Woodyear* v. *Schaefer*, 57 Md. 1 ; *Thorpe* v. *Brumfitt*, L. R., 8 Ch. App. 650; *Hillman* v. *Newington*, 57 Cal. 56 ; Cooley on Torts, pp. 78 and 79 ; Pomeroy on Remedies and Remedial Rights, §§ 307 and 308.)

The defendant is entitled to the reasonable use of its property while engaged in a lawful industry. (*Tenney* v. *Miners' Ditch Co.*, 7 Cal. 335 ; *Esmond* v. *Chew*, 15 Cal. 137 ; *Gibson* v. *Puchta*, 33 Cal. 310 ; *Auburn Plank Road* v. *Douglas*, 9 N. Y. 445 ; *Elliott* v. *Fitchburg R. R. Co.*, 10 Cush. 191 ; *Merrifield* v. *Worcester*, 110 Mass. 216 ; Cooley on Torts, 584 ; *Pitts* v. *Lancaster Mills*, 13 Met. 156 ; *City of Springfield* v. *Harris*, 4 Allen, 494 ; *Snow* v. *Parsons*, 28 Vt. 459 ; *Maitland* v. *Insurance Co.*, 3 Rich. 331 ; *Gould* v. *Boston Duck Co.*, 13 Gray, 452 ; *Red River Mills* v. *Wright*, 16 Rep. 560 ; High on Injunctions, § 824 ; *Ross* v. *Butler*, 19 N. J. Eq. 294; *Duncan* v. *Hayes*, 22 N. J. Eq. 25 ; *Wason* v. *Sanborn*, 45 N. H. 169.)

The findings and opinion of the court show that the acts of the defendant are authorized by a universal custom, founded

on necessity. (Code of C. P., § 748 ; *Sparrow* v. *Strong*, 3 Wall. 97 ; *Atchison* v. *Peterson*, 20 Wall. 512 ; *Basey* v. *Gallagher*, 20 Wall. 670 ; *Jennison* v. *Kirk*, 98 U. S. 453 ; *Broder* v. *Water Co.*, 101 U. S. 274 ; *Harvey* v. *Ryan*, 42 Cal. 628 ; *North Noonday M. Co.* v. *Orient Co.*, 6 Sawy. 299 ; *Jupiter Co.* v. *Bodie Co.*, 7 Sawy. 96 ; *Ivimey* v. *Stocker*, L. R., 1 Ch. App. 403 ; *Snow* v. *Parsons*, 28 Vt. 462 ; Washburn on Easements, 123 ; *Carlyon* v. *Lovering*, 1 Hurls. & N. 784 ; *Esmond* v. *Chew*, 15 Cal. 137 ; *Gregory* v. *Harris*, 43 Cal. 38 ; *Bliss* v. *Kingdom*, 46 Cal. 651 ; *Irwin* v. *Phillips*, 5 Cal. 140 ; *Conger* v. *Weaver*, 6 Cal. 548 ; *Merced Mining Co.* v. *Fremont*, 7 Cal. 327 ; *Hill* v. *King*, 8 Cal. 338.)

The defendant has acquired a right by prescription. (Civil Code, §§ 806, 1410–1411 ; *American Co.* v. *Bradford*, 27 Cal. 367 ; *Grigsby* v. *Clear Lake Co.*, 40 Cal. 396 ; *Goldsmid* v. *Turnbridge Wells Improvement Company*, L. R., 1 Ch. App. 349 ; *Crosby* v. *Bessey*, 49 Me. 539 ; *Carlyon* v. *Lovering*, 1 Hurls. & N. 784 ; Washburn on Easements, 630 ; Wood on Nuisances, 765, § 707.)

The acts of defendant are authorized by the acts of Congress and of the legislature of this State. (*Pound* v. *Turck*, 95 U. S. 459 ; *Escanado Co.* v. *Chicago*, 107 U. S. 678 ; U. S. Rev. St., § 2338 ; 21 Stats. at Large, 169 ; *U. S.* v. *Freeman*, 3 How. 565 ; *U. S.* v. *Babbit*, 1 Black. 61 ; *U. S.* v. *Hodson*, 10 Wall. 406 ; Broom's Legal Maxims, star p. 463, 464 ; Civil Code, § 3522 ; C. C. P., §§ 1259, 1238 ; Stats. 1887, 1888, p. 635 ; § 1, art. 14, Const. of Cal.)

Acts authorized by law are not a public nuisance. (Wood on Nuisances, 852, § 753 ; Cooley on Torts, 615 ; *Transportation Co.* v. *Chicago*, 99 U. S. 635 ; *Rex* v. *Pease*, 4 Barn. & Adol. 30 ; *Hinchman* v. *Paterson*, 17 N. J. Eq. 75 ; *Davis* v. *Mayor of N. Y.*, 14 N. Y. 524 ; *Veazie* v. *Dwinel*, 50 Me. 482 ; *Carson* v. *Central R. R. Co.*, 35 Cal. 333 ; *McDonald* v. *English*, 85 Ill. 235 ; *Pittsburg* v. *Brown*, 67 Ind. 45, S. C. 33 Am. Rep. 73 : *Attorney Gen'l* v. *Evart Booming Co.*, 34 Mich. 475 ; *Easton* v. *R. R.*, 24 N. J. Eq. 55 ; *People* v. *Law*, 34 Barb. 514 ; *First Bap. Ch.* v. *Utica & Schenectady R. R. Co.*, 6 Barb. 313 ; *People* v. *Gaslight Co.*, 64 Barb. 55–69 ; *Harris* v. *Thompson*, 9 Barb. 353 ; *Green* v. *Swift*, 47 Cal. 536 ; *Comm.* v. *Reed*,

34 Pa. St. 282; *Stoughton* v. *State,* 5 Wis. 291; *Wilson* v. *Blackbird Creek Marsh Co.,* 2 Pet. 245.)

No injunction ought to have been granted in any event in this case, by reason of delay, acquiescence, and other equitable circumstances. (1 High on Injunctions, 787; 2 Story's Eq. Juris, 5th ed., § 924 a; 3 Pomeroy's Eq. Juris, § 1349; *Attorney-General* v. *Gas Consumers' Co.,* 3 De G., M. & G. 340; *Easton & McMahon* v. *New York & Long Branch R. R. Co.,* 24 N. J. Eq. 49; *Attorney General* v. *Delaware R. R. Co.,* 27 N. J. Eq. 3; *Bassett* v. *Salisbury Co.,* 47 N. H. 426; *Edwards* v. *Allouez M. Co.,* 38 Mich. 46; S. C. 31 Am. Rep. 301; *Gilbert* v. *Showerman,* 23 Mich. 449; *Parker* v. *Winnipiseogee Co.,* 2 Black. 545; *Birmingham Canal Co.* v. *Lloyd,* 18 Ves. 515; *Tichner* v. *Wilson,* 4 Halst. Ch. 197; *Grey* v. *Ohio R. R. Co.,* 1 Grant Cases, 412; *Lady Stanley of Alderney* v. *Earl of Shrewsbury,* L. R., 19 Eq. Cases, 616; S. C. 13 Moak's Eng. Rep. 546; Binney's Case, 2 Bland. Ch. 99–103.)

*Stabler & Bayne,* for Respondent.

The attorney general may bring an action to enjoin a public nuisance. (2 High on Inj., 2d ed., § 1554 and cases cited; *Yolo Co.* v. *Sacramento Co.,* 36 Cal. 196; 3 Pomeroy's Eq. Juris., § 1349; *People* v. *City of St. Louis,* 5 Gil. 351.) The fact that others contribute to the injury is no defense. (*Woodyear* v. *Schaeffer,* 57 Md. 1; *Richmond Manufacturing Co.* v. *Atlantic DeLanic Co.,* 10 R. I. 106; *Hill* v. *Smith,* 32 Cal. 167; Hilliard on Inj., 315, § 12 b; *Crossby* v. *Lightowler,* 3 Law. Rep. 577; *Acc. St. Helens* v. *Tipping,* 11 H. L. C. 642.) It is no defense that the complainant may have a remedy by indictment or an action at law. (*Penn. Lead Co's Appeal,* 96 Pa. St. 116.)

No lapse of time legalizes a public nuisance. (C. C., § 3490; Wood on Nuisances, §§ 706, 724, 726; 4 Wait's Actions and Def. 782; *People* v. *Cunningham,* 1 Denio, 524.) The statute of limitations has no application. (*Hoadley* v. *San Francisco,* 50 Cal. 274.)

A license to mine does not include the right to do the acts complained of. (2 Black Com., Chitty's ed. 347; *Northwestern Fertilizing Co.* v. *Village of Hyde Park,* 97 U. S. 666; Yale on Mining Claims and Water Rights, 379; 1 Brightly's

Dig., p. 500, § 232 ; p. 817, §§ 1, 4 ; p. 105, § 2 ; Rev. Stat. U. S., § 2476.)   The State could not authorize acts impairing the navigation of navigable rivers.   (1 Brightly's Dig., p. 105, § 2; 1 Hittell's Codes, p. 56, § 3 ;  *People* v.  *City of St. Louis,* 5 Gilm. 351 ;  *McCullough* v. *Board of Education,* 51 Cal. 418.)

The mere fact that a particular industry has been taxed does not confer a license to continue it.   (*Youngblood* v. *Sexton,* 32 Mich. 406.)   Estoppel as against a sovereign or a State is not favored.   (*Saunders* v. *Hart,* 14 Rep. 540 ;  *Atty. Gen.* v. *Bradford Nav. Co.,* 35 L. J., Chanc. 619;  *Regina* v. *Proprietors of the Bradford Navigation Co.,* 2 Jun'st N. S. part 1, 766 ;  *McAndrews* v. *Collerd,* 13 Vroom, 189.)   No right was acquired by custom to work the mines as worked by defendant.   (Clarke's Brown on Customs and Usages ; Lawson on Usages and Customs, U. S. Revised Stat. 2324 ; Hart's Mining Stats. 15, 19, 34.)   A custom radically bad cannot be sustained.   (*Penn. Coal Co.* v. *Sanderson,* 10 Rep. 316 ; *Waring* v. *Crow,* 11 Cal. 372 ;  *Lincoln* v. *Rodgers,* 1 Mont. 217.)

The statutes of the State as to proof of the customs, usages and regulations of mines apply only to local and not to general customs.   (*Table M. T. Co.* v. *Stranahan,* 31 Cal. 393 ; *Jennison* v. *Kirk,* 98 U. S. 453, (Note of Field, J.) ; *Biddle Boggs* v. *Merced Mining Co.,* 14 Cal. 379; *Robinson* v. *Black Diamond Coal Co.,* 57 Cal. 413.)

It is no defense that the business prosecuted by defendant was lawful in itself, if the result was the creation of a nuisance. (*People* v. *Cunningham,* 1 Denio, 524 ; Wood on Nuisances, § 794 ; *Penn. Lead Co's Appeal,* 96 Pa. St. 116 ; *Little Schuylkill* v. *Nav. Co.,* 57 Pa. St. 142; *People* v. *City of St. Louis,* 5 Gilm. 351 ;  *Gold* v. *Carter,* 9 Humph. 369.)

*A. L. Rhodes,* and *I. S. Belcher,* for Respondent.

The defendant is liable for its contributions to the deposit of debris, though others are engaged in the same business.  (*Thorpe* v. *Bromfitt,* L. R., 8 Ch. App. 650; *Hillman* v. *Newington,* 57 Cal. 56 ; *Woodyear* v. *Shaffer,* 57 Md. 1 ; *Little Schuylkill* v. *Richards,* 57 Pa. St. 142 ; *Chipman* v. *Palmer,* 77 N. Y. 51; *Attorney General* v. *Stewart,* 5 C. E. Green, 419.)

Authority to do the acts complained of was not given by acts

of Congress or of the State legislature.  (*Pollard's Lessee* v. *Hagan*, 3 How. 223 ; *Pompelly* v. *Green Bay Co.*, 13 Wall. 181.)

Mining customs, rules and regulations, are inoperative beyond the limits of the mining district in which they were established.  A custom to allow mining debris to flow into the stream has never been upheld in this State.  (*Hill* v. *Smith*, 27 Cal. 476; 32 Cal. 166; *Richardson* v. *Kier*, 34 Cal. 63 ; *Courtwright* v. *Bear Run*, 30 Cal. 573 ; *Robinson* v. *Black Diamond*, 50 Cal. 461.)

Defendant cannot maintain a right to injure the lands of private parties, and to destroy the navigation of rivers, by reason of any custom of miners.  (*Jennison* v. *Kirk*, 98 U. S. 456, and other cases cited in the foregoing points and authorities.) No such right can be gained by prescription.  The attorney general had authority to bring this action.  (2 Story's Eq. Jur. 923 ; *People* v. *Davidson*, 30 Cal. 379 ; *People* v. *Vanderbilt*, 26 N. Y. 295 ; *Davis* v. *Mayor of New York*, 14 N. Y. 526 ; 2 Eden on Injunction, 259 ; *Att'y Gen'l* v *Richards*, 2 Anst. 603 ; *Att'y Gen'l* v. *Parmeter*, 10 Price, 378 ; *Att'y Gen'l* v. *Burridge*, 10 Price 350; *Att'y Gen'l* v. *Johnson*, 2 Wils. Ch. 87; *Att'y Gen'l* v. *Forbes*, 2 Mylne & C. 129 ; *Att'y Gen'l* v. *Cleaver*, 18 Ves. 211, and notes ; *State of Pa.* v. *Wheeling Bridge*, 13 How. 560 ; *Delafield* v. *State of Illinois*, 2 Hill, 162 ; *State of Ind.* v. *Woram*, 6 Hill, 36 ; *Love* v. *Baehr*, 47 Cal. 364 ; *People* v. *Stratton*, 25 Cal. 247; *People* v. *Davidson*, 30 Cal. 379; *People* v. *Jackson*, 24 Cal. 630 ; *People* v. *Morrill*, 26 Cal. 336 ; *People* v. *Carrick*, 51 Cal. 325 ; *People* v. *Shearer*, 30 Cal. 645 ; *People* v. *Supervisors of Kern*, 47 Cal. 81 ; *People* v. *Board of Supervisors*, 44 Cal. 613 ; *People* v. *Ashbury*, 44 Cal. 616 ; *People* v. *State Board of Education*, 49 Cal. 684 ; *People* v. *Board of Education*, 54 Cal. 375 ; *People* v. *Board of Education*, 55 Cal. 331; *People* v. *Supervisors of San Luis Obispo*, 50 Cal. 561; *People* v. *Broadway Wharf*, 31 Cal. 33; *People* v. *Rec'l. Dist. No.* 108, 53 Cal. 346 ; *People* v. *Parks*, 58 Cal. 624 ; *Sacramento* v. *C. P. R. R. Co.*, 61 Cal. 251.)

McKee, J.—This appeal is from an order denying a motion for a new trial, and from a judgment, which perpetually restrains the commission and compels the discontinuance of certain acts as wrongful and injurious to public rights.

The record of the case shows that " the Gold Run Ditch and Mining Company has been, since August, 1870, a corporation existing under the laws of the State of California, for the purpose of mining by the hydraulic process, and selling water to miners and others ; and that it is now, and its predecessors have been for several years last past, in possession of five hundred acres of mineral land, situated adjacent to the North Fork of the American River, and of certain mines on said land, which it works by the hydraulic process.    The natural surface of this land lies about one thousand feet above the river ; and all the material of the mines upon the land—consisting of about twenty million cubic yards of material, composed mostly of sand, gravel, small stones, cobbles and bowlders, mixed with small particles of gold, is capable of being worked off into the river. For the purpose of mining this tract of land by the hydraulic process, the company has conducted to its mine s, by means of ditches and iron pipes, a large quantity of water, which it uses, and will continue to use, under a vertical pressure of several hundred feet, discharging water through ' little giants ' and ' monitors,' and dumping all the tailings from its mines into the river.    In that manner it has been carrying on its mining operations upon said land for about eight years last past ; and up to the time of commencing this action, and during about five months of each year of said period, has been daily discharging into the said river between four and five thousand cubic yards of solid material from its said mine, to wit, of bowlders, cobbles, gravel and sand, making a yearly discharge of at least six hundred thousand cubic yards ; and will continue to discharge that quantity annually if the working of said mine be permitted to continue ; and at such rate it will require some thirty years to mine out and exhaust said mineral land."

Of the material thus discharged into the river a large portion has been washed, from the place of discharge or dump, down the river, and, " commingled with tailings from other hydraulic mines ; and still other material, which is the product of natural erosion, has been deposited in the beds and channels of the American and Sacramento rivers and their confluents, but mostly in the American, and upon lands adjacent to both rivers." The deposits of this material upon the beds and along the chan-

nels of the rivers, and through the Suisun bay, and into the San Pablo and San Francisco bays, have already filled and raised the beds of both rivers. The bed of the American has been raised from ten to twelve feet, and in some places more, and the bed of the Sacramento, to a great extent below the mouth of the American, from six to twelve feet. In consequence, the beds of the two rivers have shallowed, and their channels widened, so that the depths of the rivers have greatly lessened, and their liability to overflow has been materially increased, causing the frequent floods to extend their area, and to be more destructive than they otherwise would have been, and covering thousands of acres of good land in the Sacramento valley with mining debris. And as the rivers are at all times carrying in suspension the lighter earthy matter from the mines, and washing down the heavier debris, they are likely to fill more rapidly in the future, in proportion to the quantity of hydraulic tailings, than in the past, and to cause much further and greater injury in the future to large tracts of land—probably rendering them, within a few years, unfit for cultivation and inhabitancy. Besides, the discharge from the mines so fouls the water of the American river at all points below, as to make it unfit for any domestic use by the inhabitants. And from the same cause " the navigation of the Sacramento river has been so greatly impaired, that the river, which, until the year 1862, was navigated as far as the city of Sacramento without difficulty by steamers of deep draught, to wit, by boats drawing nine or ten feet of water, has been, since the year 1862, unnavigable as far as the city of Sacramento by boats of deep draught, except during high water, instead of at all times, as formerly. And there is imminent danger, if the acts of the defendant and others engaged in hydraulic mining are allowed to continue, that the beds and channels of the lower portion of the American river, and of the Sacramento river below the mouth of the American, will be so filled and choked up by tailings and other deposits, that said rivers will be turned from their channels, cutting new waterways, injuring or destroying immense tracts of land, which probably will result in greatly impairing the navigability of the Sacramento river."

Vast as may be the interests bound up in the litigation, yet

the questions for the consideration of this court, arising out of the facts as found by the court below, lie within a comparatively narrow compass. All of them flow into one as the main question at issue, and that is, whether the defendant, as owner of its hydraulic mines, situate on the banks of the American river—an unnavigable stream which empties its waters into the Sacramento river, the principal navigable river within the State —has the right to dump its hydraulic debris into the river, to the endangerment of habitation and cultivation of large tracts of country, upon which are cities, towns, and villages, and to the impairment of the navigation of the Sacramento river; and if there exists no such right in the defendant, do the acts committed by it, and which it threatens to continue to commit, involving such consequences, constitute a public nuisance which may be enjoined in an action in the name of the people of the State ?

Courts take judicial notice of the navigability of the Sacramento river. In addition to which, the court below has found that the river has been declared by law navigable to the mouth of Middle creek, which is above the confluence of the American and Sacramento rivers ; " and has been continually navigated by steamers, barges, schooners, and smaller craft; and, up to 1862, was navigated as far as the city of Sacramento, without difficulty, by steamers of deep draught, to wit, by boats drawing nine or ten feet of water." Navigability in law and in fact has, therefore, been established. As a navigable river, the Sacramento is a great public highway, in which the people of the State have paramount and controlling rights. These rights consist chiefly of a right of property in the soil, and a right to the use of the water flowing over it, for the purposes of transportation and commercial intercourse. The soil of a navigable river is the *alveus* or bed of the river ; the river itself is the water flowing in its channel. An unauthorized invasion of the rights of the public to navigate the water flowing over the soil is a public nuisance ; and an unauthorized encroachment upon the soil itself is known in law as a purpresture. Purpresture is also a particular kind of nuisance. The word is derived from the French word *pourpris*, which signifies an inclosure : " That is," says Coke, " when one encroacheth and makes that service-

able to himself which belongs to many. And because it is properly, when there is an inclosure made of any part of the king's demesne, or of a highway, or a common street, or public water, or such like things." (2 Coke's Insts. 271.)

Great water highways belong to the same class of public rights, and are governed by the same general rules applicable to highways upon land. Any contracting or narrowing of a public highway on land is a nuisance (Russell on Crimes, 349); and all unauthorized intrusions upon a water highway, for purposes unconnected with the right of navigation or passage, are nuisances. (*Commonwealth* v. *Caldwell*, 1 Dall. 150 ; *Commonwealth* v. *King*, 13 Met. 115 ; sections 3479, 3480, C. C.) To make use of the banks of a river for dumping places, from which to cast into the river annually six hundred thousand cubic yards of mining debris, consisting of bowlders, sand, earth, and waste materials, to be carried by the velocity of the stream down its course and into and along a navigable river, is an encroachment upon the soil of the latter, and an unauthorized invasion of the rights of the public to its navigation ; and when such acts not only impair the navigation of a river, but at the same time affect the rights of an entire community or neighborhood, or any considerable number of persons, to the free use and enjoyment of their property, they constitute, however long continued, a public nuisance.

In *Veazie* v. *Dwinel*, 50 Me. 479, certain mill occupants on the Penobscot river were accustomed to throw slabs, edgings, and other waste materials from their mills into the river, to float or sink, and obstruct navigation. The Supreme Court compelled the discontinuance of the practice. " Highways," said the court, " whether on land or water, are designed for the accommodation of the public for travel or transportation ; * * * they cannot be made the receptacles of waste materials, filth or trash, nor the depositories of even valuable property, so as to obstruct their use as public highways. * * * If, therefore, any person obstruct a stream, which is by law a public highway, by casting therein waste material, or filth, or trash, or by depositing material of any description, except as connected with the reasonable use of such stream as a highway, or by direct authority of law, he does it at his peril—it is a public nuisance." And

in *Garrish* v. *Brown*, 51 Me. 262, the court reiterates the
same doctrine : " A person who casts at random filth, or trash,
or waste materials into a public river, to float or sink as it may,
without guidance or direction, can in no sense be said to be in
the use of such river for lawful purposes."

But it is contended that as the nuisance complained of and
found by the court was the result of the aggregate of mining
debris dumped into the stream by the defendant and other min-
ing companies, acting separately and independently of each
other, the acts of the defendant cannot be joined with the acts
of other mining companies, to create a cause of action against
the defendant. The contention is made upon a finding by the
court as follows :

" On the American river and its tributaries a vast amount of
mining was done in early times, and up to this time a great deal
is being done, besides that by the defendant. No other mine
contributes annually more detritus to the river than the de-
fendant; still I am unable to say that defendant's mine alone,
without reference to the debris from other mines, materially
contributes to the evils mentioned ; or, in other words, if there
were no mining operations save those of the defendant, I am not
prepared to say that it would materially injure the valley lands,
or the navigation of the river. It is the aggregate of debris
from all the mines, which produces the injuries mentioned in
these findings."

And it is attempted to sustain the contention by the cases of
*Chipman* v. *Palmer*, 77 N. Y. 51 ; *Schuylkill Navigation Com-
pany* v. *Richards*, 57 Pa. St. 142 ; *Sellick* v. *Hall*, 47 Conn. 260,
and *Keyes* v. *Little York*, 53 Cal. 724.

The first three of those cases were actions on the case for
damages ; the first, for polluting the water of a stream by the
discharge of sewage therein ; the second, for the filling up of
the basin of a dam and water-power with coal-dirt and waste
material, cast into a stream by separate collieries, working their
mines on the stream independently of each other ; and the third,
for the overflow of a brook, obstructed by the defendant and
other persons who were not parties to the action. Each of those
cases was decided upon the principle that where several persons,
acting independently of each other, engage in the commission

of wrongful acts, the torts are distinct and not joint ; and each is only severally liable for the injury caused by his own acts, and not for the torts of others with whom he was not acting in concert. There can be no doubt of the correctness of that principle, and of its applicability to an action at law for the recovery of damages for the violation of a private right. But in the case of *Keyes* v. *Little York*, the late Supreme Court of this State applied the principle to an action in equity, by which the plaintiff sought to enjoin a number of persons, who, without privity or concert of action, contributed to the washing down from their mining claims, mining debris into a stream which carried it down, and spread it over the plaintiff's land, rendering it valueless. To the complaint in the action, the court sustained a demurrer, upon the ground of misjoinder, because all who contributed to the injury complained of could not be joined as defendants, without an averment that they acted in concert in the commission of the wrongful acts charged against them.

That case, however, was practically overruled by this court, in *Hillman* v. *Newington*, 57 Cal. 62. That also was a case in which the plaintiff sued a number of persons to recover damages for the wrongful diversion of the water of a stream, and to perpetually enjoin them from diverting the same. The defendants answered, as in *Keyes* v. *Little York*, that they were improperly joined in the action, because they acted severally and not jointly. But this court said : " Each of the defendants diverts some of the water, and the aggregate reduces the volume below the amount to which the plaintiff is entitled, although the amount diverted by any one would not. * * * All who act must therefore be held to act jointly," and the damages and costs may be apportioned by the court, sitting as a court of equity. This case clearly recognized the equitable principle that, in an action to abate a public or private nuisance, all persons engaged in the commission of the wrongful acts which constitute the nuisance may be enjoined, jointly or severally. It is the nuisance itself, which, if destructive of public or private rights of property, may be enjoined.

The *King* v. *Trafford*, 1 Barn. & Adol. 874, was a criminal action for a public nuisance to a public canal navigation, established

by act of Parliament. The jury found that the acts creating the nuisance were done by the defendants separately; but it was held, nevertheless, that as the nuisance was the result of all those acts jointly, the defendants were rightly joined in one indictment, which stated the acts to be several.

Whenever an indictable nuisance exists, there is a coördinate remedy in equity to abate it by injunction. In an equitable action for that purpose, there is generally raised no question of damages. Until the adoption of the codes, such a question could not be raised in an action in equity for the abatement of a nuisance. The only question was, whether the nuisance complained of and sought to be redressed had been committed; and it was no answer, in such an action, where there was no question as to a separate or joint liability for damages in the case, to say that other persons were committing the same sort of nuisance. (*Crossley & Sons* v. *Lightowler*, L. R., 3 Eq. Cas. 279; *Chipman* v. *Palmer*, 77 N. Y. 51.) So in *Woodyear* v. *Schaeffer*, 57 Md. 9, it is said: "It is no answer to a complaint of nuisance, that a great many others are committing similar acts of nuisance. Each and every one is liable to a separate action, and to be restrained. * * * The extent to which the appellee has contributed to the nuisance may be slight, and scarcely appreciable. Standing alone, it might well be that it would only very slightly, if at all, prove a source of annoyance. And so it might be, as to each of the other numerous persons contributing to the nuisance. Each standing alone might amount to little or nothing. But it is when all are united together, and contribute to a common result, that they become important, as factors, in producing the mischief complained of. And it may only be after, from year to year, the number of contributors to the injury has greatly increased, that sufficient disturbance of rights has been caused to justify a complaint. * * * In that state of facts * * * each element of contributive injury is a part of one common whole; and to stop the mischief in the whole, each part in detail must be arrested and removed."

But it is also claimed that the defendant has acquired the right from custom, and by prescription and the statute of limitations, to use the American and Sacramento rivers as outlets for its mining debris; and that in the exercise of this right it can-

not be restrained in its business of hydraulic mining, notwith-
standing the consequent injuries to those rivers.

Undoubtedly, the fact must be recognized, that in the mining
regions of the State, the custom of making use of the waters of
streams as outlets for mining debris has prevailed for many
years; and as a custom it may be conceded to have been found-
ed in necessity; for without it, hydraulic mining could not have
been economically operated. In that custom the people of the
State have silently acquiesced, and upon the strength of it min-
ing operations, involving the investment and expenditure of
large capital, have grown into a legitimate business, entitled
equally with all other business pursuits in the State to the
protection of the law. But a legitimate private business, found-
ed upon a local custom, may grow into a force to threaten the
safety of the people, and destruction to public and private rights;
and when it develops into that condition, the custom upon which
it is founded becomes unreasonable, because dangerous to pub-
lic and private rights, and cannot be invoked to justify the con-
tinuance of the business in an unlawful manner. Every busi-
ness has its laws, and these require of those who are engaged in
it to so conduct it as that it shall not violate the rights that be-
long to others. Accompanying the ownership of every species
of property is a corresponding duty to so use it as that it shall
not abuse the rights of other recognized owners. (§§ 3479,
3514, C. C.; 731, C. C. P.)

Upon that underlying principle, neither State nor Federal
legislatures could, by silent acquiescence, or by attempted legis-
lation, take private property for a private use, nor divest the
people of the State of their rights in the navigable waters of
the State for the use of a private business, however extensive
or long continued.

As we have already said, the rights of the people in the nav-
igable rivers of the State are paramount and controlling. The
State holds the absolute right to all navigable waters and the
soils under them, subject, of course, to any rights in them which
may have been surrendered to the general Government. (*Mar-
tin* v. *Wade*, 13 Pet. 410.) The soil she holds as trustee of
a public trust for the benefit of the people; and she may, by
her legislature, grant it to an individual; but she cannot grant

the rights of the people to the use of the navigable waters flowing over it; these are inalienable. Any grant of the soil, therefore, would be subject to the paramount rights of the people to the use of the highway. And such was the doctrine of the common law. "The *jus privatum*," says Lord Hale, in *De Jure Maris*, p. 22, "must not prejudice the *jus publicum*, wherewith public rivers and arms of the sea are affected to public use." It is, therefore, beyond the power of legislatures to destroy or abridge such rights, or to authorize their impairment.

As to the claim of right derived from prescription and the statute of limitations, it is sufficient to say that a right to continue a public nuisance cannot be acquired by prescription. (*Pettis* v. *Johnson*, 56 Ind. 139; *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396; *Wright & Rice* v. *Moore*, 38 Ala. 593; *People* v. *Cunningham & Harris*, 1 Denio, 524; *Mills* v. *Hall & Richards*, 9 Wend. 315.) Nor can it be legalized by lapse of time. (§ 3490, C. C.) Against it, however long continued, the State is bound to protect the people; and for that purpose the attorney general, as the law officer of the State, has the power to institute a proceeding in equity in the name of the people, to compel the discontinuance of the acts which constitute the nuisance. (*County of Sacramento* v. *The Central P. R. R. Co.*, X. Pac. C. L. J. 27; 61 Cal. 250; *People* v. *Stratton*, 25 Cal. 242; *Yolo County* v. *Sacramento*, 36 Cal. 193.) As was said in *People* v. *Booth*, 32 N. Y. 397: "The remedy to prevent the erection of a purpresture and nuisance in a bay or navigable river, is by injunction at the suit of the people by their attorney general. For all the people of the State are interested in the question, and have the right to use all bays and navigable rivers within the State; and I think the attorney general may maintain an action in the name of the people of the State to prevent the obstruction of a public highway, which all the people have a right to travel, because all of them have an interest in such highways."

There is no prejudicial error in the record. Judgment for a perpetual injunction and order affirmed.

MYRICK, J., and MORRISON, C. J., concurred.

McKINSTRY, J., concurring.—I concur in the conclusions reached by Mr Justice McKee, with reference to the questions by him considered and discussed.    But in my opinion the case of *Keyes* v. *Little York Company*, 53 Cal. 724, has no direct bearing upon any question presented now here.    That was an action by an individual proprietor, his claims to an injunction being based upon alleged facts showing that he had suffered, by reason of a public nuisance, special injuries differing in kind and degree from those sustained by other members of the public; either so, or an action to restrain a private nuisance. There, many persons whose acts had been several, and not even concurrent, were made defendants.    The complaint in the action now here is in the nature of an information by the attorney general on behalf of the people of the State ; and the Gold Run Ditch and Mining Company is the sole defendant.

Among other matters the court below found : " Said defendant has been mining its said tracts of land for about eight years last past, in the mode and process aforesaid ; and up to the time of commencing this action, and during about five months of each year of said period, has been daily discharging into the said North Fork between four and five thousand cubic yards of solid material from its said mine, to wit : of bowlders, cobbles, gravel, and sand ; making a yearly discharge of at least six hundred thousand cubic yards ; and will continue to discharge that quantity annually, if the working of said mine be permitted to continue; and at such rate it will require some thirty years to mine out and exhaust said mineral land.

" That a large portion of the material so dumped by the defendant into the North Fork of the American river has been washed down said river by the water, and commingled with tailings from other hydraulic mines; and still other material, which is the product of natural erosion, has been deposited in the beds and channels of the Sacramento and American rivers, but mostly in the American river, and upon the lands adjacent to said rivers; and that by said mining of the defendant and other mines the filling up, raising, and shallowing of said rivers has been materially increased, to the impairment of the navigation of the Sacramento river, and to the excessive overflow of the lands adjacent to said rivers, to the great injury of said

land, and damage, discomfort, and annoyance of a great number of citizens of the State, owners of said land, and residents of said valley."

The court found that a public nuisance had been created when this action was commenced. And the court also found that defendant was adding to, and, unless restrained, would continue to add to, the obstructions which constituted the nuisance, and thus aid in increasing and perpetuating it. This made a proper case for an injunction.

Appellant attaches grave consequence to a further finding, which is supposed to qualify those which precede it:

" On the American river and its tributaries a vast amount of mining was done in early times, and up to this time a great deal is being done, beside that by the defendant. No other mine contributes annually more detritus to the river than the defendant's; still, I am unable to say that defendant's mine alone, without reference to the debris from other mines, materially contributes to the evils mentioned ; or, in other words, if there were no mining operations save those of the defendant, I am not prepared to say that it would materially injure the valley lands or the navigation of the river. It is the aggregate of debris from all the mines which produces the injuries mentioned in these findings."

It is urged that, while the complaint alleges the defendant has materially contributed, and will materially contribute, to the nuisance, the judge below has declared " he is unable to say " that defendant's mine alone materially contributes to the evil ; which (it is claimed) is either a finding that defendant's mine does not materially contribute, or the court has failed to find on the *material* issue. But the meaning of the language which immediately precedes it is rendered very clear by the clause in the finding last quoted : " or, *in other words*, if there were no mining operations save those of the defendant, I am not prepared to say that it would materially injure the valley lands, or the navigation of the river."

But the contributions of defendant may have been material —substantial, real, and appreciably capable of rendering more durable and more injurious an existing nuisance—although of themselves they would not in their aggregate have produced

the mischief mentioned in the findings.   There is no contradiction, therefore, between the finding last referred to and those which determine that a large portion of the material dumped by the defendant into the North Fork has been washed down and deposited in the bed and channels of the Sacramento and American rivers, etc.   None of the findings can be construed as deciding that the deposits made by defendant have contributed, or will contribute, to the shoaling of the waters in so slight a degree as not substantially to affect the building up or continuation of the obstructions to their flow, in the natural channels of the rivers.

THORNTON, J., concurring.—Whether *Keyes* v. *Little York Company*, 53 Cal. 724, is or not overruled by *Hillman* v. *Newington*, 57 Cal. 62, I express no opinion.   No question of that kind, in my judgment, is involved in this case, or necessary to its decision, and therefore I forbear to give any opinion upon it.   As to the other points discussed in the opinion of Justice McKee, I agree with what is said, and the conclusion reached by him.

SHARPSTEIN, J., and ROSS, J., concurring.—We think the decree in its entirety should be affirmed.