This is an action for damages. The complaint alleges that the defendants unlawfully, and with force, and against the will of plaintiff, ejected him from certain land and premises occupied by him in the business of retail liquor and tobacco dealer, and without his consent took and carried off and converted to their own use all his goods, wares, and merchandise, to his damage in the sum of fifteen hundred dollars, and have ever since said time kept him so *Page 730 
ejected from said premises, and that his business has been wholly destroyed to his further damage in the sum of twenty-five hundred dollars. The answer denies these allegations.
The action was tried by jury, and a verdict was returned for plaintiff in the sum of five hundred dollars, upon which judgment was entered. On motion for a new trial, the trial court required plaintiff, as a condition precedent to the denial of the motion, to remit two hundred dollars, and, this having been done, the judgment was reduced by deducting therefrom two hundred dollars, and the motion for a new trial was denied. Defendants appeal from the judgment and order denying a new trial.
The appeal is apparently entirely destitute of merit. But two points are made in appellants' brief, the first being that the evidence fails to show any conversion of plaintiff's property by defendants. It would serve no useful purpose to discuss the evidence on this point, for there is absolutely no specification of insufficiency in the statement referring even in the remotest degree to the question of conversion of this property. This court has in recent cases shown a willingness to liberally construe the statutory requirement of specifications of the particulars in which it is claimed the evidence is insufficient to justify the verdict, but it has never intimated that it will look into the question of the sufficiency of the evidence upon any point as to which there is not a specification sufficient in statement to advise opposing counsel and the trial court of the grounds upon which the attack is to be made, so that they may determine what should be put into the statement. To consider the question of the insufficiency of the evidence in the absence of such a specification would be to entirely disregard the statute.
The only other point made by appellants is, that the trial court refused to allow the defendants to prove the prices which the property in question brought at the subsequent sheriff's sale, it being claimed that such testimony was some evidence of value. The record shows that such prices were proved by one of defendants' witnesses.
The judgment and order are affirmed.
 Shaw, J., and Van Dyke, J., concurred. *Page 731 
 In Memoriam ISAAC SAWYER BELCHER
The following memorial to the late Justice Isaac S. Belcher was read before the Supreme Court in Bank at San Francisco, on Monday, June 2, 1902, by J.W. Turner, Esq., and ordered spread upon the minutes.
IN THE SUPREME COURT OF THE STATE OF CALIFORNIA.
May it please your honors: —
On the thirtieth day of November, A.D. 1898, "in harness dying," at the post of duty fell a former justice of this honorable court.
It has pleased the All-wise Judge of judges, by an afflictive dispensation of his providence, to suddenly arrest by the hand of the "grim sergeant, Death," in the midst of a career of honorable activity and usefulness, an acting commissioner of this court, — Honorable ISAAC SAWYER BELCHER, — and summon him to fill a higher station, and to enter into his rest and his reward.
The members of the bar of the old tenth and twenty-first judicial districts of the state of California, feeling that tardy recognition of his life and worth by the members of the profession had been accorded him, and conscious that "justice delayed is justice denied," after patiently, yet vainly, waiting for some appropriate action in this matter, in loving memory of our deceased brother, are desirous on this occasion of presenting a short sketch of the life and character of the deceased, and ask this honorable court that the same may be entered upon the minutes of the court, and ordered printed in a volume of our Reports of Decisions, as expressing the sentiments of this court, and commemorative of his life and worth. *Page 732 
 In Memoriam
ISAAC SAWYER BELCHER, the second of three brothers who united to make the name honored and distinguished at the bar of our state, was born in the town of Stockbridge, Vermont, on the twenty-seventh day of February, 1825. His father, Samuel Belcher, was a farmer, who, believing in the dignity of labor, permitted no idle hands within his household, and hence all were required to labor according to their strength and capacity to promote the general good.
Isaac was early initiated into the mysteries of agriculture, and strengthened a naturally vigorous frame by the healthful exercise of hoeing corn, digging potatoes, and attending to the ordinary farm duties adapted to his years. He attended the village school in its season, and there acquired the rudiments of education in all the English branches of study.
In 1842 he entered the University of Vermont, in Burlington, from which he graduated with honors in 1846. There he acquired an extensive knowledge of the ancient classics, and early wooed the Muse. When twenty-one years of age, he entered the law office of J.W.D. Parker, Esq., a leading practitioner of that time, as a student, and there commenced a thorough course of legal study. Blessed by nature with a very retentive memory, he soon became master of legal principles, and was admitted to the bar of the supreme court of Vermont in 1852.
Allured to the golden shores of California, he arrived here on the sixteenth day of June, 1853, and after a sojourn of one month in the state of Oregon, returned to California, settled on the Yuba River, and there sought to extract the golden "chispas" from the Yuba's yellow sand at Parke's Bar, and afterward at Camptonville. Never having entirely abandoned the love of a profession to which he was attached, he resumed the practice of the law, and in the "mines of knowledge" sought for and found its brighter gems.
He settled at Marysville in 1855, opened a law office, and soon acquired a lucrative practice.
In 1861 Judge Belcher revisited his old home, and there was happily united in marriage with Miss Adeline Johnson, *Page 733 
of Augusta, Maine. And this noble lady, with three children, yet survives him, one of whom, Richard Belcher, now practicing at Marysville, is a member of the bar of this court.
Judge Belcher was district attorney for Yuba County in 1856-57; district judge of the old tenth judicial district from 1864 to 1869; frequently presiding over the court in and for the twenty-first judicial district also. He was a justice of this honorable court from March 4, 1872, to December 31, 1873, and was recognized as one of the great constitutional lawyers of the state in the constitutional convention held in Sacramento in 1878-79. He was a lover of the cause of education, and was one of the original trustees of the Stanford University, and afterwards supreme court commissioner from March 16, 1885, until his sudden death on the thirtieth day of November, 1898.
As a lawyer, he was painstaking and industrious. As a constitution-maker and builder, he labored hard in the convention of 1878-79. His calmness and foresight pointed clearly to several defects in that instrument, from which this commonwealth is still suffering to-day. As an expounder of that constitution, he has been seldom surpassed. Possessed of a keen, vivid perception, a healthy, vigorous intellect, and sound, unbiased judgment, as a judge he solved the most abstruse problems and difficult questions. Moral courage permeated his every fiber, and thus he was not swayed nor influenced in discharging his official duties. Honest, incorruptible, and conscientious in deciding cases tried before him, he was trusted by all. If a jury was swayed by eloquence or artifice of counsel, or their verdict given through prejudice, bias, or clear mistake of fact, he never hesitated to set it aside. He never sought popular applause. His greatest effort at the bar was made in the litigation commonly referred to as the fight between the farmers and the miners; two phases of which were presented to, and considered by, this court in 53 Cal. 724, and 66 Cal. Rep. 138 to 155.
It was in his calm, dispassionate argument to the trial court in the latter case he uttered the memorable words, "True eloquence is logic ignited, consuming subtlety, sophistry, and glittering generality." He detested treachery and deceit, and a verbal stipulation once entered into was sacredly regarded. To the young lawyer he was kind, patient, and *Page 734 
indulgent; to the old veteran of the bar, courteous and deferential: yet he was a firm man, a generous opponent, a truly honorable adversary. A man of broad scholastic attainments, he delighted to roam in classic fields. Pure and elegant in diction, forcible and chaste in style, exact in expression, his opinions stand as his best witnesses to his greatness. An earnest kindly bearing both in and out of court marked his life. No art-acquired Grandisonian bow, no Chesterfieldian smile distinguished him among men; but an unassuming, modest candor, and a hearty hand-grasp betrayed the noble throbbings of his soul, and made us feel his generous heart-warmth.
A true patriot, he was loyal to the institutions of his country, placing her flag above party, and principles before men or measures.
A Christian man, of strong, earnest convictions, he was a devout follower of the Redeemer of mankind. In his home life, tender, loving, and congenial; in contact with the world, calm and dispassionate. No profane word ever fell from his lips.
His life-work ended, we lay this tribute on his grave, and crown him with a wreath of immortelles.
May the earliest buds of spring unfold their beauties over his last resting-place, and here may the sweetness of his memory linger ever.
 *Page 1