118　115
142　526

## ISABELLA PATTEN ET AL. v. MOSES SCOTT.

### ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 18, 1887—Decided January 3, 1888.

1. A defendant in ejectment who claims title by a continuous adverse possession for twenty-one years after warrant and survey and before patent to the warrantee or those claiming under him, may set up the title thus acquired against a patent granted before action brought.

2. A survey was made to T. S. in 1830 under a warrant issued in 1823 : An adverse possession was begun by P. in May, 1863 : In June, 1884, M. S., claiming under T. S., obtained a patent and in September, 1884, brought ejectment against P : *Held*, that a title so maturing to P. should constitute a good defence.

Before GORDON C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 81 October Term 1887, Sup. Ct.; court below, No. 81. November Term 1884, C. P.

Moses Scott was the plaintiff below in an action of ejectment against William Patten, to recover a tract of land in Carroll township, containing about one acre, the summons

being issued on September 11, and served on September 17, 1884. Plea, not guilty. On December 24, 1886, the death of the defendant was suggested and Isabella Patten et alii, his widow and heirs, were substituted.

At the trial on March 3, 1887, before STOWE, P. J,, 5th district, holding special term, the plaintiff showed title by survey to Thomas Scott on August 13, 1830, in pursuance of a warrant dated August 26, 1823, embracing the land in dispute; the will of Thomas Scott, dated June 24, 1854, proved March 4, 1856, devising a tract embracing the land in dispute to his children; deed from the devisees of Thomas Scott for all their interests in the land thus devised, to Moses Scott, acknowledged January 30 and February 26, 1863, and recorded; also a patent from the commonwealth to Moses Scott, dated June 5, 1884, for 2 a. and 40 p., embracing the land in dispute. This patent recited that it was granted " in consideration of moneys paid by Thomas Scott at the granting of the warrant hereinafter mentioned and of the sum of nine dollars and forty-six cents in full of the purchase money, interest and fees, now paid by Moses Scott into the treasury office of the commonwealth," etc. The plaintiff, showing possession by defendants, then rested.

The defendants, under objection, introduced evidence tending to show that William Patten, the defendant when the summons was served, had title to the land in dispute, by adverse and uninterrupted possession of all of it since May, 1863, and of a large part of it for many years before 1863, and rested. After the plaintiff had begun his rebutting case, the trial judge announced that upon reflection he was satisfied that the title set up under the evidence of adverse possession was no defence to the title shown by the plaintiff. The trial being then arrested, the court charged the jury and answered the plaintiff's point as follows:

This case has been brought to a very sudden termination by the position I have been compelled to take on the matter of law involved in the defence set up. Yesterday, after the plaintiff had shown what was clearly, and what was admitted to be, a prima facie title to the property in dispute, testimony was offered by the defence to establish a twenty-one years' adverse possession, which under our statute of limitations

gives a complete right under ordinary circumstances. Objection was made to the admission of the testimony on the ground that it was immaterial, because, even if true, even if the testimony for the defence uncontradicted, established the fact that the defendants had been twenty-one years in adverse possession of this property, from 1862 down to the bringing of suit, it was alleged it still constituted no defence as against the plaintiff's title. But, at that time, I am free to say my impression was the other way, after the decision was read to me by the counsel for the defence; and, having serious doubt about it, to say the least, the only safe way was, for the present, to rule it would constitute a proper defence and allow the case to go on. But upon subsequent reflection, and after the suggestion of the counsel for the plaintiff as to differences in this case arising out of the fact that in 1884 the commonwealth had recognized the title of the plaintiff by giving him a patent which conveyed all the rights of the commonwealth to him at that time, and in view of the cases that have been cited, I began to think there was probably a serious difficulty in the matter; and after last night's consideration and examination of the authorities, so far as I have been able to get hold of them, and in the limited time I have had, I have come to the conclusion the objection to the testimony was well taken. It is therefore unnecessary to take the time to support an alleged defence which, when it was all in, I would be compelled to tell the jury could not avail the defendants. I therefore told the counsel this morning that even if the defendants proved all that they say they could prove, the plaintiff was entitled to the property; and the case has been such that [it is now my duty to say to you that under the testimony in the case the plaintiff is entitled to a verdict, and that the alleged defence of the statute of limitations will not avail the defendants; that, as it may be good, is good, as between the parties themselves, if neither party had obtained a patent from the commonwealth, yet, the patent having been obtained in 1884, and notwithstanding the fact the defendants may have—and for the present we assume they did have—an adverse possession of this property for more than twenty-one years before the suit was commenced, yet as the case stands now, the plaintiff claiming by virtue of his survey and warrant previously, and

his patent obtained in 1884, your verdict must be for the plaintiff for the land described in the writ.] [2]

The point which has been put is this : The plaintiff respectfully requests the court to charge the jury as follows :

That the statute of limitations set up by the defendants as their defence, will not run against the plaintiff's title perfected by patent acquired from the commonwealth in 1884 under a prior warrant and survey, and therefore the verdict of the jury must be for the plaintiff.

This point is affirmed, and at the instance of the defendants this bill of exception sealed. [1]

Judgment having been entered upon the verdict returned in favor of the plaintiff, the defendants took this writ, assigning for error :

1. The affirmance of plaintiff's point. [1]

2. The part of the charge embraced in [ ] [2]

*Mr. R. W. Irwin* (with him *Mr. Thomas McK. Hughes*), for the plaintiffs in error :

Is the adverse possession by the defendants for more than twenty-one years prior to the bringing of the suit, a good defence to the plaintiff's title ? If the plaintiff had not obtained the patent for the land in dispute, the defence would have been conclusive against him : McCoy v. The Trustees of Dickinson College, 4 S. & R. 301. What is the effect of his obtaining the patent ?

1. By § 3, act of March 29, 1809, 5 Sm. L. 46, the purchase money must be paid before the warrant is obtained. The presumption is that the state officers have done their duty and that the purchase money was paid before the warrant was issued; Burford v. McCue, 53 Pa. 434. By the payment of the purchase money, Thomas Scott became the owner of the land under his warrant and survey and was entitled to the patent. Had he lived and remained in possession, his title could not have been defeated by a patent erroneously granted to Moses Scott. Thomas Scott, thus being the owner, the commonwealth held the legal title in trust for him. As he could have held against the commonwealth, how could a subsequent patentee occupy a higher position than the common-

wealth? The defendants, by their twenty-one years adverse possession, obtained all the right, title and interest of Thomas Scott and those claiming under him; and their rights are identical with what his rights would be, were he living and in possession: Lessee of Cox v. Cromwell, 3 Binn. 114; Byers v. Sheplar, 5 Cent. R. 293.

2. The question in this state is, generally, not who has got the patent, but who on principles of law and equity ought to have had it, when it issued. It is not true that he who obtains a patent, shall avoid all titles by warrant and survey of which he has had no notice; for a warrant and survey are in most respects considered as a legal estate, except as against the commonwealth: Maclay v. Work, 5 Binn. 154; Gonzalus v. Hoover, 6 S. & R. 118; Woods v. Wilson, 37 Pa. 379.

3. A patent is only prima facie evidence of title, and the patentee is a trustee for the right owner: Gingrich v. Foltz, 19 Pa. 38; Urket v. Coryell, 5 W. & S. 60. Hence the question is, not who has the patent, but who should have had it?—Moses Scott, out of possession and claiming the patent under the warrant and survey to Thomas Scott, or the defendants, in possession, who have obtained all the rights of Thomas Scott by adverse possession before the patent was issued? We contend that if the defendants had twenty-one years adverse possession of the land in dispute after the warrant and survey to Thomas Scott, they are the owners of the land and entitled to the patent as against one claiming under Thomas Scott; that Moses Scott holds the patent in trust for them; and that whether there had been such adverse possession was a question of fact which should have been left to the jury.

*Mr. T. J. Duncan* (with him *Mr. John Aiken*), for the defendant in error:

1. In Byers v. Shepler, 5 Cent. R. 293, the question now under consideration was not raised, either in the Common Pleas or in this court, and is nowhere discussed in it. It is a violent assumption that in that case this court "took for granted" the issue now raised. An objection not brought to the attention of the court below cannot and for obvious reasons ought not to be considered here: Torrance v. Torrance, 53 Pa. 509; Morton v. Funk, 6 Pa. 485; Snevily v. Egle, 1 W. & S.

483; Road in Moore Tp., 17 Pa. 117. McCoy v. The Trustees of Dickinson College, 4 S. & R. 302, is wide of the mark. The contest was between parties neither of whom held a patent. The real title remained in the commonwealth, and the case goes no further than to decide that, between rival claimants under a warrant only, adverse possession is a defence. We submit that, in view of the cautionary expressions in Johnson v. Irwin, 3 S. & R. 292, by the same judges who decided McCoy v. The Trustees etc., the latter case cannot be extended beyond the facts to which it was intended to apply and it is not an authority in the case now under discussion.

2. However long the Pattens may have occupied the land in dispute, the title of the state was not destroyed thereby. That title is not affected by the statute of limitations : Morris v. Thomas, 5 Binn. 80; Troutman v. May, 33 Pa. 459; Johnson v. Irwin, 3 S. & R. 292; Bagley v. Wallace, 16 S. & R. 245. The patent conveys to the patentee the title to the land as perfect and as free from the claims of third persons as it existed in the state. A defence of adverse possession invalid against the state, cannot be set up against her grantee, for occupation prior to the date of his patent: § 4, act March 16, 1843, P. L. 80; Ormsby v. Ihmsen, 34 Pa. 471; Morrow v. Whitney, 5 Otto 554; Beard v. Federy, 3 Wall. 491. Wherefore, Moses Scott received the title of the commonwealth as free from any adverse claim under the statute of limitations as it was if held by the state itself.

3. The fallacy of the argument by which an attempt is made to set up a trust as to the title in the commonwealth in favor of Thomas Scott, arises from the false assumption as to who paid the purchase money to the state. It is set forth on the face of the patent that it was paid by Moses Scott, the patentee. Moreover, a proper interpretation of § 3, act of March 29, 1809, does not require the payment of the purchase money at the issuance of the warrant of survey, and that such payment is not a prerequisite is illustrated by many cases: Emery v. Spencer, 23 Pa. 272; Woods v. Wilson, 37 Pa. 381; Waggoner's Admr's App., 13 S. & R. 307; Keyzey's Est., 9 S. & R. 72; Biddle v. Dougal, 5 Binn. 148; and by many legislative enactments: § 4, act of March 16, 1843, P. L. 80; § 1, act of January 25, 1816, 6 Sm. L. 309; §§ 1, 2, act May 20,

1864, P. L. 914; §§ 1, 2, act April 11, 1872, P. L. 51; § 1, act of March 12, 1830, P. L. 77.

4. The decisions of courts of appellate jurisdiction, as far as accessible, establish the principle that there can be no adverse possession prior to the date of the patent against the title vested by it, and that the statute does not begin to run until the patent issues: Oaksmith's Lessee v. Johnson, 2 Otto 346; Burgess v. Gray, 16 How. 48; Henshaw v. Bissell, 18 Wall. 269; Gibson v. Chouteau, 13 Wall. 101; Steel v. Smelting Co., 16 Otto 452; Smelting Co. v. Kemp, 14 Otto 640; Morrow v. Whitney, 5 Otto 554; Oriton's Heirs v. Davison, 1 Gratt. 211; Smead v. Williams, 6 Ga. 158; Jackson v. Vail, 7 Wend. 126; La Frombois v. Jackson, 8 Cow. 602 (18 Amer. D. 472).

OPINION, MR. JUSTICE GREEN:

It was fully conceded on the trial that the defendants' testimony must have shown an adverse possession of the premises in dispute sufficient to confer title under the statute of limitations, if the patent from the commonwealth had not been obtained by the plaintiff. As the patent was not issued until June, 1884, and the adverse possession was conceded, as to the whole of the premises, back to May, 1863, and as to a considerable part thereof, for many years prior to that time, it is apparent that the title by adverse possession had closed before the grant of the patent, if the statute was a good defence to the plaintiff's claim.

The present controversy is exclusively between private parties. The commonwealth is not a party in any sense, nor has she any interest whatever in the litigation. The warrant under which the plaintiff claims, in connection with his patent, was issued in August, 1823, almost sixty years before the date of the patent. During that time, and before the issue of the patent, the defendants' title by adverse possession had commenced, had progressed, and had fully matured. It cannot be questioned that if the patent had not been obtained by the plaintiff, the defendants' title by adverse possession would have been perfectly good against the plaintiff's title by warrant and survey. This very point was decided in McCoy v. Trustees of Dickinson College, 4 S. & R. 302, and the decision then made has never been doubted since. It is contended, however, that

because the patent was not granted the legal title remained in the commonwealth; and that as the statute could not be pleaded against her, it could not be pleaded against her grantee until twenty-one years of adverse possession after its issue. Is this the law? The very question—that is to say, the question arising upon such precise facts—does not appear to have been decided by this court. The decisions of the English courts and of our Federal courts are not applicable, because the peculiar title by warrant and survey, as we have always recognized and enforced it, has no existence within those jurisdictions. The solution of the question must be worked out by a consideration of our own decisions and of the principles which underlie them.

Before referring to the authorities it is well to note a consequence which is certainly anomalous, and seems to be absurd, of the proposition that the grant of the patent protects the patentee against the plea of the statute. It is this: that no amount of adverse possession will create a title against a warrantee who has not taken out a patent, providing he obtains one before bringing suit, while twenty-one years of such possession will defeat a patent actually issued. In other words, a warrantee, if he will only abstain from taking out his patent, may hold an unassailable title by virtue of his warrant and survey alone, without taking possession or doing any acts indicative of an intent to take possession, and against one who has taken and held adverse possession, made improvements, cultivated the land, and performed every act of ownership possible to any owner and continued in such possession and ownership not only for twenty-one years, but for an indefinite time beyond that period. If this be so, the title of such a warrantee is better without than with a patent. If such is the law it must be enforced; or if such a result is the necessary and inevitable consequence of the doctrine that the statute of limitations cannot be set up against the commonwealth, it must be accepted, whether absurd or not.

In the case of McCoy v. The Trustees of Dickinson College, above referred to, the facts were, that the trustees claimed title under an application entered in the land office in 1769 and a survey executed and returned in 1772. On the trial the defendant offered to prove a title by adverse possession from

1787 until the commencement of the suit. The evidence was re-
jected under exception, and its admissibility was the question
in this court. On the argument here the same position was
advanced as in the present case, to wit, that as no patent had
issued the title remained in the commonwealth, and as the
commonwealth was not bound by the statute those who claimed
under her were not bound. Mr. Chief Justice TILGHMAN dis-
poses of that question and discusses the case in the following
manner : " The evidence offered by the defendant went directly
to prove that neither the plaintiffs nor the persons under
whom they derived title had been in possession for more than
twenty-one years before the commencement of the suit. Why,
then, was it not legal evidence? Because, say the plaintiffs, the
land not having been patented, the legal title remained in the
commonwealth and the commonwealth not being bound by the
act of limitations, neither are those persons bound who hold
the land under the commonwealth. This is a question of very
great importance hitherto undecided; and in order to judge of
it we must consider the nature of a title by warrant, or applica-
tion, and survey without patent. In Pennsylvania lands to a
very great amount are held by such titles ; and if they are ex-
cepted from the operation of the act of limitations no inconsider-
able portion of the state will be left exposed to that uncertainty
which it was the object of the act to prevent. It was the
custom of the proprietaries of Pennsylvania from ancient
times down to the Revolution, to contract for the sale of lands
in various modes and to deliver possession without receipt of
the purchase-money. But in such case no patent was issued;
consequently they retained the legal title. The title of the
purchaser was sui generis, unknown to the law of England,
and at first not well defined by our own law. Until towards
1760 rights of this kind were considered as personal property.
About that time, I will not undertake to fix the period, they
assumed a more important character and were considered as
real estate ; and it is certain that at least from the year 1760 a
title by warrant and survey has had all the principal attributes
of a legal estate saving the rights of the proprietaries and of
the commonwealth who succeeded to them. It will support an
ejectment; it descends as real estate ; it is subject to the rights
of dower and tenancy by the curtesy.. It has been recognized

as 'real estate by acts of assembly. At the time of the passing of the act of limitations it was perfectly understood by the legislature, and must have been intended, without doubt, to be comprehended in that act in such manner as not to impair the right of the commonwealth. Until the patent issues the legal title is in the commonwealth, and the act of limitations has no force against the commonwealth. Even without having recourse to the pre-eminent rights which exempt the supreme power of the nation from the operation of statutes in which it is not expressly named, it is · evident from the nature of the case, that the possession of those persons who hold unpatented lands, is not adverse to the commonwealth. On the contrary, the nature of the contract and the custom of the country prove that the possession is under and with the consent of the commonwealth. But as to all private persons the case is different, and it would be attended with incalculable mischief, if the undisturbed possession for twenty-one years should confer title and safety on the holders of patented lands, but be of no avail when there is no patent. The words of the act of limitations embrace both cases, nor is the least trace of distinction between them to be found in the act. As to the right of the state it is the duty of the court to protect it, without extending their protection to others who stand in different circumstances, and who cannot be protected without throwing the country into confusion. It is to no purpose to cite cases upon the British statute of limitations; they are inapplicable because England has no species of property like our right under warrant and survey." Responding to the case of Morris v. Thomas, 5 Binn. 77, cited by counsel for the plaintiff, the chief justice further said: "But if Morris's survey had been executed in the year 1750, soon after the date of the warrant, the law would have adjudged him to be in possession at least from the return of survey, and when once in possession, his title would have been of that kind upon which the statute of limitations might operate."

I have quoted thus fully from the foregoing opinion, because it would not be possible for me to set forth with more, or with as much clearness and force, the historical and legal aspect of the subject discussed, as is done in the very lucid, terse, and convincing language of the chief justice. His opinion has not

only never been departed from, but it has been followed and enforced repeatedly since and in various circumstances. The decision settles conclusively several important matters: 1. That for more than a century past a legal estate in lands could be acquired and held in Pennsylvania by warrant and survey without patent and without the payment of the purchase-money to the commonwealth. 2. That such estate has all the attributes of perfect and complete legal title excepting only the right of the commonwealth, which substantially is a right to have its purchase-money paid and to avoid the statute of limitations. 3. That while, as against the commonwealth the statute may not be pleaded, where the controversy is between private persons alone, it may be pleaded as against a title by warrant and survey, and practically the title of the warrantee may be acquired by a properly constituted adverse possession for twenty-one years.

This being so, and the interests of the commonwealth requiring only such protection as is necessary to enforce payment of the purchase-money, we think it follows that in any case when the purchase-money has been paid, no matter by which of the parties, the right of the commonwealth has been secured, and her interests require no further protection; and where it has not been paid it can be enforced as well against the person holding by adverse possession as against the warrantee. In the present case the purchase-money was paid by the plaintiff, but not until after the defendants' title by adverse possession had become perfect as against him. The commonwealth, therefore, has no interest in the controversy, and there is no occasion to apply the rule that as against her the statute cannot be pleaded. In these circumstances we see no reason why the plaintiff cannot be held as trustee of the title for the defendants. It was his own laches which enabled the defendants to acquire his title by a good-faith possession, maintained adversely, continuously, and visibly for more than twenty-one years. If now he may defeat that title by simply going to the land office and taking out the patent on paying the purchase-money, he can take advantage of his own wrong, first, in the guilt of his laches, and secondly, in neglecting the payment of the purchase-money until after the title by adverse possession had matured, when it ought to have been paid at least half a

century before.   Had it been then paid and patent issued, there is not a moment's question that the defendant's title by adverse possession would be perfect.   Can it be that the plaint-iff shall be in better condition by reason of his laches and his negligence of duty than he would have been if that duty had been promptly performed—better without his patent than with it?   We think not.   The language of C. J. TILGHMAN on this very subject in the case above cited is very apposite and quite convincing : "It would be attended with incalculable mischief if the undisturbed possession for twenty-one years should con-fer title and safety on the holders of patented lands, but be of no avail where there is no patent."

In the case of Gonzalus v. Hoover, 6 S. & R. 118, we held that "the title under the patent may be controverted by one who claims under an imperfect title, depending on a settle-ment, warrant, or location without patent ; and then the ques-tion will be to whom the patent ought to have been granted by the land office.   The law has never been held in the great extent laid down in this charge ; that by obtaining a patent and selling to a purchaser for a valuable consideration, all inquiry as to adverse claims founded on an equity arising pre-vious to the patent, was precluded."

In Maclay v. Work, 5 Binn. on p. 157, we said: "Land to a vast amount has been held for a great length of time without patent, and it would have ruinous consequences, if it were established, that he who first got hold of the patent should avoid all titles of which he had no notice.   Patents are often obtained without much inquiry into the title.   It has been the custom to suffer their validity to be contested, and where the litigant parties appear in a court of justice, the question gen-erally is, not who has got the patent, but who was entitled to it on principles of law and equity, at the time it was issued." In the same case, YEATES, J., said, p. 161: "Here, daily experience demonstrates that recoveries may be had, and defences set up against the patentees, their heirs, and assigns, under an equita-ble imperfect title, even by settlement and improvement.   It has been correctly admitted by counsel for the defendant that the true point of inquiry amongst us is, who ought to have the patent under all the merits of the case, and not who has it at the time of trial."

In Gingrich v. Foltz, 19 Pa. 38, we held that a patent is only prima facie evidence of title, and the patentee is a trustee for the right owner. The recitals in a patent are evidence against one who relies on possession alone and shows no title, or who claims under improvement or other right arising subsequent to the date of the patent; but they are not evidence against one holding by settlement or other right originating prior to the date of the patent. In delivering the opinion, LEWIS, J., said: "And it has been repeatedly decided that it is not the law of Pennsylvania that by obtaining a patent and selling to a purchaser for a valuable consideration, without notice, all inquiry as to adverse claims founded on equities arising previous to the patent is precluded."

In Urket v. Coryell, 5 W. & S. 60, KENNEDY, J. said: "And as to abandonment, this can never be presumed from lapse of time, where the plaintiff and those from whom he derived his title claimed and held the land, as in this case, under warrants and surveys upon which the whole of the purchase money had been paid to the commonwealth. Nothing short of an actual ouster of the owner from the land in such case, by taking possession of it and continuing to keep the same by exercising acts of ownership at least upon it for twenty-one years or upwards, will defeat the owner of his right to the land; but if he lies by for twenty-one years under such circumstances, without making an entry upon the land or bringing his action of equivalent (ejectment) for it, he will be barred by the statute of limitations." According to this last decision, even if the warrantee has paid the purchase-money it will not avail him as against the title by adverse possession. In no Pennsylvania case has it been held that the laches of the warrantee, or those claiming under him, may be cured by the subsequent grant of a patent so as to defeat a title by adverse possession otherwise good. The question was stated in the case of Johnston v. Irwin, 3 S. & R. 292, but its decision was expressly withheld. It neither arose nor was decided in Ormsby v. Ihmsen, 34 Pa. 471. All the reasoning of the cases heretofore cited in this opinion is in the opposite direction and logically leads to the conclusion which we now adopt: that where the title by adverse possession has fully matured against the warrantee and those claiming under him, it may be successfully pleaded, whether a

patent has been subsequently granted or not.  We are there-
fore of opinion that the evidence in this case should have been
submitted to the jury with proper instructions, in accordance
with the views herein expressed.

Judgment reversed, and new venire awarded.