JOHN C. WARREN, Respondent, v. EDWARD S. PARKHURST et
al., Appellants, Impleaded with Others.

1. RIPARIAN RIGHTS — WHEN LOWER RIPARIAN OWNER MAY MAIN-
TAIN ACTION AGAINST A NUMBER OF UPPER RIPARIAN OWNERS TO
RESTRAIN THEM ALL, ALTHOUGH ACTING SEPARATELY, FROM POLLUTING
THE WATERS OF A STREAM. The owner of land abutting upon a canal,
maintained from time immemorial for the purpose of leading the greater
part of the waters of a stream to certain large mills, there to be used for
power, may maintain an action in equity to restrain a number of corpora-
tions and persons, some sued simply as individuals and some as members
of copartnerships, doing business on premises abutting upon the upper
waters of the stream, from discharging tannery and factory refuse and
other filthy substances into the stream, thereby polluting the waters and
bed and banks of the stream and occasioning offensive deposits in the
canal and upon the land of the plaintiff, whereby the comfort of the plain-
tiff and his tenants was destroyed, the premises rendered unhealthful and
the value thereof diminished.

2. PLEADING — WHEN COMPLAINT IN SUCH ACTION NOT DEMURRABLE. The complaint in such action, considered as a bill in equity to restrain the further pollution of the stream by the defendant, is not demurrable upon the grounds: (1) "That it fails to state facts sufficient to constitute a cause of action" in that "The damages suffered by the plaintiff from the pollution of the stream by any one defendant, if there were no other sources of pollution, would be nominal;" and (2) upon the ground of "multifariousness, in that it commingles and blends certain alleged causes of action against certain defendants separately, which are not good against them jointly and do not affect all the defendants," where it is alleged that the injury suffered by plaintiff arises from the concurring and continuous trespass and wrongdoing of all the defendants, and that, if continued, the acts of the defendants will constitute a permanent nuisance and an irreparable injury to the premises and property rights of the plaintiff; since the acts of the defendants may be independent and several, but the results of these several acts combine to produce whatever damage or injury the plaintiff suffers, and in equity constitute but one cause of action.

*Warren* v. *Parkhurst,* 105 App. Div. 239, affirmed.

(Argued June 14, 1906; decided October 2, 1906.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 13, 1905, which affirmed an interlocutory judgment of the court at a Trial Term overruling a demurrer to the complaint.

The demurrer specified two objections : *First,* that the complaint did not state facts sufficient to constitute a cause of action ; and, *second,* that causes of action had been improperly united, the specific defect of the complaint in this respect being stated to be "multifariousness, in that it commingles and blends certain alleged causes of action against certain defendants separately, which are not good against them jointly and do not affect all the defendants." The Appellate Division certified the following questions to the Court of Appeals : (1) Does the complaint state facts sufficient to constitute a cause of action ? (2) Are causes of action improperly united in the complaint, for the reasons stated in the defendants' demurrer ?

*Frank Burton* and *William A. McDonald* for appellants. The demurrer should have been sustained as the complaint

does not state facts sufficient to constitute a cause of action against these defendants jointly and severally in that it fails to state facts showing that there is between the defendants either a unity of title or of act, or community of interest, or legal concurrence in creating the alleged nuisance; if the complaint alleges any kind of an action it is one against the defendants severally. (*Chipman* v. *Palmer*, 77 N. Y. 51; *Keyes* v. *L. Y. G. W. & W. Co.*, 53 Cal. 724; *Sellick* v. *Hall*, 47 Conn. 260; *L. S. N. R. & C. Co.* v. *Richards*, 57 Penn. St. 142; *Loughram* v. *City of Des Moines*, 72 Iowa, 386; *Sloggy* v. *Dilworth*, 38 Minn. 179; 15 Ency. of Pl. & Pr. 675; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139; *Fellows* v. *Fellows*, 4 Cow. 682.)

*Thomas J. McDermott, Andrew J. Nellis* and *M. D. Murray* for respondent. The complaint states a good cause of action against all the defendants collectively. (*M. V. Co.* v. *Santa Barbara*, 144 Cal. 578; *Lockwood Co.* v. *Lawrence*, 77 Me. 297; *Sage* v. *Culver*, 147 N. Y. 241; *Wallace* v. *Jones*, 182 N. Y. 37; *Marie* v. *Garrison*, 83 N. Y. 14; *Kain* v. *Larkin*, 141 N. Y. 144; *Trueb* v. *N. Y. A. Mfg. Co.*, 16 Misc. Rep. 482; *Milliken* v. *W. U. T. Co.*, 110 N. Y. 403; *Wenk* v. *City of New York*, 171 N. Y. 607; *Corey* v. *Rice*, 4 Lans. 141.)

WILLARD BARTLETT, J. This action is brought against forty defendants in the city of Gloversville. Some of them are corporations, some are sued simply as individuals, and others are sued as members of copartnerships. Most of them are engaged in business as tanners and colorers of skins and manufacturers of leather.

The material allegations of the complaint may fairly be summarized as follows: The defendants, for a period of six years, have been carrying on business on the premises of each, which premises are situate on or near Cayadutta creek and the headwaters thereof, which creek, but for the wrongful acts of the defendants hereinafter stated, and of the city of

Gloversville and others, is and has been a large stream of pure
and wholesome water of equable flow ordinarily contained
within its banks, flowing through the town and city of Johns-
town into the Mohawk river.   In the city of Johnstown there
has been maintained from time immemorial a canal upwards
of half a mile in length, leading the great bulk of the waters
of Cayadutta creek westerly to certain large mills, there to be
used for power.   The plaintiff, for the last ten years, has
owned, and now owns, a lot of land and dwelling house on
this canal, occupied for residential purposes and the main-
tenance of a meat market.   The defendants for the last six
years have discharged, and do now discharge, each from his own
place of business into Cayadutta creek, large quantities of filthy
matter and tannery and factory refuse and harmful and pol-
luting substances, solid and liquid, thereby polluting the waters
and bed and banks of the creek, rendering them offensive to
the senses and occasioning deposit in the canal and upon the
lands of the plaintiff thereon, rendering them less useful
for domestic purposes.   By reason of this pollution of the
canal disagreeable and noxious odors have arisen, continually
pervading the plaintiff's dwelling house and meat market,
destroying the comfort of the plaintiff and his tenants in the
use of his property and diminishing the value thereof and
rendering the premises unhealthful.   Each defendant main-
tains permanent drains and sluices for carrying such refuse
and polluting and harmful substances into Cayadutta creek,
and intends to continue such discharge thereof and to increase
the same unless restrained from so doing.   " The damages
suffered by the plaintiff from the pollution of the stream by
any one defendant, if there were no other sources of pollu-
tion, would be nominal; but from the concurring and con-
tinuous trespass of all the defendants, the injury which the
plaintiff and his lands sustain is great and if the said nuisance
is continued will be irreparable and the said lands and tene-
ments will be rendered wholly worthless for domestic or for
other purposes."

The complaint concludes with a prayer for an injunction

and that the plaintiff recover of the defendants $1,000 for the damages which he has already suffered.

Considered as a bill in equity to restrain the further pollution of the waters of Cayadutta creek by the defendants, I think that the complaint states a cause of action and is not objectionable on the ground of multifariousness. Whether it would be good if the plaintiff sought only to recover damages at law, it is not necessary now to decide.

The principles of equity jurisprudence applicable to the determination of this appeal have never been more clearly stated by any tribunal in the United States or more thoroughly or ably discussed than in the opinion of the Supreme Judicial Court of Maine in the case of *Lockwood Co.* v. *Lawrence* (77 Me. 297). The nuisance which was the subject of complaint in that case arose out of the deposit in a river of the waste from sawmills by several owners and proprietors of such sawmills acting independently of one another. The refuse material and debris arising from the operation of their separate sawmills was carried down the river and commingled into one indistinguishable mass before it reached the premises of the complainant, where it was deposited in such quantities as to constitute a nuisance. Objection was made to the joinder of the several defendants in one bill on the ground that the cause of action was distinct and several as against each of them, it being expressly alleged in the bill that each was independently working his own sawmill without any conspiracy or preconcert of understanding or action with the others. This objection was held to be untenable, inasmuch as there was co-operation in fact in the production of the nuisance. "The acts of the respondents," said Foster, J., "may be independent and several, but the result of these several acts combine to produce whatever damage or injury these complainants suffer, and in equity constitutes but one cause of action."

Another leading case in which the same rule was applied is *Draper* v. *Brown* (115 Wis. 361), which was a suit in equity against a number of defendants to restrain the commission of

acts resulting in a nuisance and consequent injury of the prop-
erty of the plaintiff.   The gravamen of the action was the
unlawful lowering of the waters of a lake below their accus-
tomed level, the plaintiff alleging that some of the defendants
who owned a mill dam at the outlet of the lake drew an excessive
quantity of water therefrom; that other defendants withheld
the natural flow of a river running into the lake, and that still
another obstructed the flow of the river, thereby diminishing
the quantity of the water which reached the lake.   It was con-
tended that two or more causes of action were improperly
united in the complaint, but the court held that the complaint
stated but one cause of action in which all the defendants
were interested inasmuch as though all the defendants acted
independently and without concert their acts united and con-
curred in producing the injurious result.   The fact that the
parties were acting without concert was declared to be no
defense to an equitable action for injunctive relief if their
acts contributed in some appreciable degree to produce the
conditions sought to be repressed.

To the same effect is the decision in *Woodruff* v. *N. B. G.
M. Co.* (8 Sawy. Cir. Ct. 628), which was a bill against a num-
ber of hydraulic mining companies in California, severally
owning mines at various points on the Yuba river and its
affluents and working them independently of each other.
The relief sought was an injunction to restrain the defend-
ants from discharging the mining debris arising from the
operation of their several mines into the streams, it appear-
ing that the debris became mingled therein into an indis-
tinguishable mass and was deposited upon the lands of the
complainant so as to constitute a great public and private
nuisance.   There was a demurrer to the bill on the ground
of misjoinder and multifariousness and it was contended in
particular that inasmuch as each defendant was pursuing its
own business severally without any joint intent or joint action
the cause of action was distinct and several as against each
and that neither the defendants nor the several causes of action
could be joined in the same suit.

In overruling the demurrer SAWYER, C. J., declared that after a very careful examination and analysis of the numerous authorities cited in support of the proposition stated he was entirely satisfied that under the principles of equity jurisprudence as established in England and in the United States there was no misjoinder of defendants and that the bill was not multifarious. Among other things he said: "The nuisance is created by the joint action of the debris from the various mines, which is combined, and afterwards flows on together, long before it reaches the lands injured and threatened, and after such combination creates the nuisance complained of. There is, therefore, a co-operation in fact, if not in intent, of these several defendants in the production of the nuisance. The injury is the joint effect of acts, originally several, but combined before the debris is precipitated upon the lands below and the injury is effected, and in contemplation of equity it constitutes a single cause of action. There is a common interest in the right claimed to discharge debris into the streams. The defendants each and all claim a common though not a joint right. The final injury is a single one — a single result of the combined operation of this debris — and all the defendants co-operate in fact in producing it. No damages are sought. Only equitable relief is demanded by restraining future action — a future contribution by each to the nuisance."

In the decisions of the English courts we also find precedents for the maintenance of such a suit in equity as that before us. In *Thorpe* v. *Brumfitt* (L. R. [8 Ch. App.] 650) Thorpe, the lessee of an inn, brought an action against Morrell, Brumfitt and other tenants of Morrell for an injunction to restrain the defendants from blocking up or obstructing a right of way leading to the inn. The obstruction complained was caused by allowing carts and wagons to remain stationary in the passage in course of loading and unloading so as to obstruct access to the yard of the inn. The master of the rolls made a decree declaring that the plaintiffs and the defendants had an equal and reciprocal right to the

use of the roadway, but that none of the persons interested
were entitled to place or to leave any stationary obstruction
in such roadway except at such times as the use thereof was
not required for any of the other persons interested therein,
and he granted an injunction in accordance with this declara-
tion.   The decree and injunction were affirmed in the Court·
of Appeal and Lord Justice JAMES in his opinion sustained
the proposition that the acts of several persons may constitute
a nuisance which the court will restrain when the damage
occasioned by the acts of any one if taken alone would be
inappreciable.   He said : " Then it was said that the plaintiff
alleges an obstruction caused by several persons acting inde-
pendently of each other, and does not show what share each
had in causing it.   It is probably impossible for a person in
the plaintiff's position to shew this.   Nor do I think it neces-
sary that he should shew it.   The amount of obstruction
caused by any one of them might not, if it stood alone, be
sufficient to give any ground of complaint, though the amount
caused by them all may be a serious injury.   Suppose one
person leaves a wheelbarrow standing on a way that may cause
no appreciable inconvenience, but if a hundred do so that
may cause a serious inconvenience which a person entitled to
the use of the way has a right to prevent, and it is no defense
to any one person among the hundred to say that what he
does causes of itself no damage to the complainant."

The case last cited goes directly to the question presented
here by the express allegation in the complaint that the dam-
ages suffered by the plaintiff from the pollution of the stream
by any one defendant, if there were no other source of pollu-
tion, would be merely nominal.   It is argued on behalf of
the appellants that the expression of Lord Justice JAMES on
this question is merely a dictum ; but even if that be true,
it seems to me that it is a dictum which embodies a cor-
rect statement of the law.   It was followed by CHITTY, J., in
*Lambton* v. *Mellish* (L. R. [3 Ch. Div. 1894] 163), where the
head note correctly states the decision as follows : " The acts
of two or more persons may, taken together, constitute such

a nuisance that the Court will restrain all from doing the acts constituting the nuisance although the annoyance occasioned by the act of any one of them if taken alone would not amount to a nuisance." The nuisance there under consideration was due to the combination of musical sounds produced by two organs used in connection with certain merry-go-rounds. "If the acts of two persons," said CHITTY, J., "each being aware of what the other is doing, amount in the aggregate to what is an actionable wrong, each is amenable to the remedy against the aggregate cause of complaint." Although neither of these English cases is the decision of a court of last resort it is to be noted that the principle which they enunciate as to the liability in equity of several persons contributing to a nuisance where the conduct of one alone would not suffice to constitute an actionable wrong was adopted as correct by the Supreme Judicial Court of Maine in the case of *Lockwood Co.* v. *Lawrence,* already cited, where it is said in the opinion: "In the case at bar, it may be that the act of any one respondent alone might not be sufficient cause for any well-grounded action on the part of the complainants; but when the individual acts of the several respondents, through the combined results of these individual acts, produce appreciable and serious injury, it is a single result, not traceable perhaps to any particular one of these respondents, but a result for which they may be liable in equity as contributing to the common nuisance."

I have examined all the cases cited in behalf of the appellants and I find none which is an authority against the right of the plaintiff to maintain the present action except the case of *Keyes* v. *Little York Gold Washing & Water Co.* (53 Cal. 724), decided in November, 1878, but subsequently overruled. This was a suit by the owner of bottom lands upon a river to enjoin a number of miners at points higher up on the river from depositing the tailings of their several mining claims so that they reached the channels of the river and were swept down and were deposited upon the lands of the plaintiff. The court sustained the demurrer to the complaint upon

the ground that it did not appear that the defendants had jointly committed any of the acts alleged, or that they were acting in concert or by collusion with each other. The decision, therefore, at the time when it was rendered was authority for the proposition that several wrongdoers acting independently could not be joined in an equitable proceeding to procure an injunction against all of them.

A different view was taken by the same tribunal in November, 1880, when the personnel of the court had so changed that only one judge remained in it who had participated in the previous decision. This was in the case of *Hillman* v. *Newington* (57 Cal. 56), where the plaintiff sued a number of persons to recover damages for the wrongful diversion of the water of a stream, and to perpetually enjoin them from diverting the same. The defendants answered that they were improperly enjoined in the action because they acted severally and not jointly. The court held that the action was maintainable, saying: " It is not at all improbable that no one of the defendants deprives the plaintiff of the amount to which he is entitled. If not, upon what ground could he maintain an action against any of them? If he were entitled to all the water of the creek, then every person who diverted any of it would be liable to him in an action. But he is only entitled to a certain specific amount of it, and if it is only by the joint action of the defendants that he is deprived of that amount, it seems to us that the wrong is committed by them jointly, because no one of them alone is guilty of any wrong. Each of them diverts some of the water. And the aggregate reduces the volume below the amount to which the plaintiff is entitled, although the amount diverted by any one would not. It is quite evident, therefore, that without unity or concert of action, no wrong could be committed ; and we think that in such a case, all who act must be held to act jointly." It is a curious fact that in this *Hillman* case the opinion does not refer to the prior decision the other way in the *Keyes* case, although the *Keyes* case was cited in the briefs of counsel. The fact that the *Keyes* case has been overruled is

recognized, however, in subsequent decisions on this same branch of the law by the Supreme Court of California. (*People* v. *Gold Run D. & M. Co.*, 66 Cal. 138; *Miller* v. *Highland Ditch Co.*, 87 Cal. 430, 433.)

An examination of the *Hillman* case shows that the court there held, not only that an equitable action was maintainable by a lower riparian owner against a number of upper riparian owners to restrain the wrongful diversion of water, but that damages were also recoverable against such defendants in one suit. Only nominal damages ($1.00) were awarded by the judgment, however, and a later decision in California (*Miller* v. *Highland Ditch Co.*, *supra*) has modified the *Hillman* case to this extent, so as to hold that while several tort-feasors, not acting in concert or by unity of design, are not liable to a joint action for *damages*, although the consequences of their several torts have united to produce an injury to the plaintiff, they are liable to be *enjoined* by decree from the continuance of their tortious acts. The latest California case in which this proposition is asserted appears to be *Montecito Valley Co.* v. *Santa Barbara* (144 Cal. 578, 595) which was an action brought by a plaintiff claiming a property right to take water from a stream against several defendants who were alleged to be diverting water from the stream to the injury of the plaintiff. There was no claim for damages against the defendants as general tort-feasors, but merely a prayer for injunctive relief. It was held that an action might be brought to restrain independent diverters of the waters of a stream to the injury of the plaintiff, though not acting in concert or by unity of design.

*Chipman* v. *Palmer* (77 N. Y. 51) was not a suit in equity, but an action to recover damages suffered by the keeper of a boarding house near a stream against the keeper of another boarding house further up the stream for polluting the stream by sewerage. The injury appeared, however, to be caused not by the act of the defendant alone, but by the conduct of other persons who also discharged sewerage into the stream. It was merely held that, under these circumstances, the plaintiff could

not recover as against the defendant alone *all the damage he had sustained.*   MILLER, J., concedes that an equitable action will lie to restrain parties who severally contribute to a nuisance, and merely asserts "that where different parties are engaged in polluting or obstructing a stream, at different times and places, *the whole damages* occasioned by such wrongful acts *cannot be collected of one of the parties*" (p. 56).

The case of *Sellick* v. *Hall* (47 Conn. 260) is not an authority for the appellants.   There the defendant had constructed a covered channel for a small brook that ran through his premises in the city of Norwich.   This channel obstructed the flow of water that came down the brook in heavy rains and caused the water to overflow on the adjoining premises of the plaintiff.   The suit was for damages to the plaintiff's property occasioned by this overflow.   It appeared that the city of Norwich had constructed sewers which emptied into the brook above the defendant's premises and added to the volume of the stream.   The court, among other things, held that the defendant and the city could not be regarded as joint tort-feasors.   The defendant was said to be liable, if at all, because his insufficient channel was a nuisance, whereas the liability of the city was for pouring into the stream a quantity of water and sewage for which there was no sufficient channel.   The court declared that the torts of the defendant and the city had in law nothing in common, there being not even a juxtaposition of the wrongful acts, one being the maintenance of an insufficient channel by the defendant and the other a letting in of an increased volume of water and sewage from artificial drains and sewers.   It hardly needed any argument in this case to show that the torts were not joint, and there is no claim in the case at bar that the action of the defendants in polluting Cayadutta creek was joint in the sense of being inspired by a common purpose.   That the acts were concurrent, however, if the allegations of the complaint are taken as true, does not admit of doubt.

The case of *Little Schuylkill Navigation Co.* v. *Richards'*

*Administrator* (57 Pa. St. 142) was not a suit in equity but an action at law to recover damages for throwing dirt into a stream, which was carried down and deposited upon the lands of the plaintiff. It was held that the defendants were only severally liable at law for their acts, and that damages could not be recovered against them as joint tort-feasors.

*Sloggy* v. *Dilworth* (38 Minn. 179) merely holds that so far as damages are concerned they are not recoverable against the defendants jointly unless they are shown to be acting jointly in the premises. This is apparent from the following extract from the opinion of the court: " If waters are wrongfully turned upon the land of another as the result of the acts of several parties, they are all liable. It is no defense that the injury caused or wrong done by any one, standing alone, might not be sufficient ground of complaint. If the damage caused is the combined result of several acting independently, recovery may be had severally in proportion to the contribution of each to the nuisance, and not otherwise."

None of the other cases cited in the brief for the appellants bears sufficient resemblance to the case at bar to require discussion.

I think that the judgment of the Appellate Division should be affirmed, with costs, and that the first question should be answered in the affirmative and the second question in the negative, with leave to defendants to withdraw demurrer and serve answer within twenty days on payment of costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN and WERNER, JJ., concur; CHASE, J., not sitting.

Judgment affirmed.