## Commonwealth ex rel. v. Philadelphia & Reading Coal & Iron Co. et al.

412

*Robert McCay Green,* city solicitor, and *Howard E. Stern, Samuel Feldman, Abraham Wernick,* and *G. Coe Farrier,* assistant city solicitors, for plaintiff.

*Penrose Hertzler, Thomas C. Egan, E. Russell Shockley, Arthur Littleton, William Clarke Mason,* and *William A. Schnader,* for defendants.

KUN, J., March 22, 1944.—The bill in this case was filed in the name of the Commonwealth ex relatione the Attorney General and the City of Philadelphia, jointly as plaintiffs, against 24 coal companies as defendants, charging each specifically with unlawfully discharging into the Schuylkill River or its tributaries coal silt and refuse allegedly affecting navigation on the river and, by such pollution of the water, endangering the life, health, and safety of the people of Philadelphia with respect to their water supply by interfering with the operation of the city's reservoir and pumping stations causing a decrease of the intake, thereby curtailing the supply required by the people of the city for domestic and industrial purposes. Defendants filed preliminary objections to the bill, the first of which was that the record did not show that the Attorney General had joined in signing the bill or authorized its filing on behalf of the Commonwealth. This informality was promptly corrected by the filing of a so-called "amended" bill which was in fact not an amended bill but merely showed the affidavit of the Attorney General and his official joinder. This was done by leave of court. It is a serious question whether the absence of the affidavit of the Attorney General to the bill was properly made the basis of a preliminary objection to the bill under Equity Rule 48. We are inclined to the view that a motion to strike off or rule to file warrant of authority would be more appropriate. However, the subsequent filing of the appropriate affidavit by the Attorney General and his official joinder of record in the proceeding makes the question somewhat academic. Under the law, the Attorney General may intervene in any case at any time in the public interest, even without leave of court. See Act of July 7, 1919, P. L. 731, 12 PS §145.

Defendants, after the formal joinder by the Attorney General in effect validating the action previously instituted in the name of the Commonwealth, no doubt

by his authorization, could have within 10 days filed preliminary objections to the bill qua the Commonwealth but did not do so. Instead they appeared before the court more than a month thereafter and presented their arguments on their preliminary objections only so far as the right of the city was concerned, stating that they were not prepared to make any argument against the right of the Commonwealth because of their view that it was not properly a party. We considered this to have been a rather extraordinary position for defendants to take, but nevertheless granted them 10 days' additional time from the date of the argument to file preliminary objections as against the right of the Commonwealth, if they desired to do so. The objections filed as to the Commonwealth raise no additional substantial questions.

Our review of the matter leads us to the conclusion that defendants have sought to create a highly complicated controversy out of a matter which in the last analysis is a very simple one. The Schuylkill River is a navigable stream which at the same time is the source of water supply for a large number of communities in the eastern part of the State, the largest of which is the City of Philadelphia. The bill alleges in considerable detail the extent of the water supply plants constructed by the city, the auxiliary pumping stations and reservoirs it operates and maintains for the storage of water, pipes, conduits, filter beds, which require the use of millions of gallons of water. The bill charges defendants with unlawfully discharging into the Schuylkill River or its tributaries mine silt and coal dirt to such an extent that it impedes navigation of the river and also endangers the health, welfare, and safety of the inhabitants of the city with respect to their water supply. If it can be shown that defendants are responsible for the condition alleged to exist, they are guilty of creating a public nuisance and may be enjoined from continuing it. The bill pleads the cause of

action fully and adequately and each of the defendants is in a position to answer the bill on the merits and say whether or not it is contributing in any way to the thing charged against it. We may state in passing that the bill here is much more comprehensive in its allegations than was the bill filed by the city as far back as 1896 in an original proceeding in the Supreme Court (Miscellaneous Docket 1, no. 246) against two of the principal defendants in the instant case and others, in which similar relief was sought and in which the right of the city was fully recognized, but the injunctive relief prayed for was deemed unnecessary because of the referee's report that the defendants had during the pendency of the proceeding taken adequate steps to prevent the continuance of the nuisance. The Supreme Court, however, retained jurisdiction of the bill so that further application for relief might be made thereunder if it should thereafter become necessary. As a matter of interest, the city solicitor stated that when he sought to move under that case the Supreme Court directed that he file the bill in the instant case, not because of any question of the right of the city to proceed but because many additional defendants are now involved, not mentioned in the former proceeding.

It is rather strange for defendants in the face of such a background of the case to argue that the city is not entitled on the facts alleged in the bill to the relief prayed for. Defendants start with the false premise that the city only is a plaintiff here. They then set up another false premise, that the city has no greater right in the matter than a private individual would have; and, having set up these strawmen, point to what they term to be the "leading case" of Pennsylvania Coal Co. v. Sanderson et ux., 113 Pa. 126, as authority for their position that the city is not entitled to the relief sought. That case did indeed limit the application of the maxim "sic utere tuo ut alienum non laedas" as defining the duty of an

owner of property (contrary to three successive hold-
ings otherwise in the same case by the same court, the
last holding following a change in the personnel of the
court in the interim, from which three of the justices
dissented—on such fortuitous circumstances does the
law sometimes turn). Every attempt to extend the ap-
plication of that case has failed. On the contrary, its
limitation has repeatedly been emphasized. The argu-
ment of defendants overlooks the core of the whole
case, namely, that we are concerned here with the pub-
lic use of a stream for domestic purposes which at the
same time is a navigable stream. The limitation of the
Sanderson case has been nowhere emphasized more
strongly than in the case of Pennsylvania R. R. et al.
v. Sagamore Coal Co. et al., 281 Pa. 233, decided nearly
20 years ago. There, the Pennsylvania Railroad Com-
pany and a number of water supply companies sought
injunctive relief against a number of coal companies
to restrain them from discharging their polluted mine
water into the streams there involved. It was only
after the filing of the bill by the water companies and
the railroad company that the Attorney General inter-
vened for the Commonwealth (as distinguished from
the case before us in which the action was in the first
instance commenced in the names of the Common-
wealth and the city). Defendants there likewise sought
to invoke the rule laid down in the Sanderson case as
sustaining their right to drain their mine refuse into
the stream. Mr. Justice Schaffer (later Chief Justice),
who wrote the opinion for the court, sharply drew at-
tention to the limitation of the Sanderson case, a suit
of a private individual to redress a private wrong, by
pointing out (p. 246):

"That litigation did not involve the rights of the pub-
lic to the waters of streams in any sense. What was
affected by the pollution of the stream was the private
concern of that plaintiff. The case was determined on
the balancing of the 'necessities of a great public in-

dustry' and a 'mere personal inconvenience'. It was said: 'The community does not complain on any grounds. The plaintiff's grievance is for a mere personal inconvenience and we are of opinion that mere private personal inconvenience arising in this case and under such circumstances must yield to the necessities of a great public industry, which although in the hands of a private corporation subserves a great public interest. To encourage the development of a great national resource of a country, *trifling inconvenience to particular persons* must give way to the necessities of a great community.' "

The italicized portion here is to indicate that the same words were italicized by Mr. Justice Schaffer (not so in the original opinion) to emphasize the limitation of the case. Mr. Justice Schaffer then proceeds (p. 247) with this rather strong statement:

"No language used in that opinion can be tortured into an implication that the waters of the Commonwealth can be polluted by its mines, where the public is affected as it is here. It has always been under our law a nuisance to pollute a stream from which the public gets its supply of water [citing cases]."

In other words, while there may be some "balancing" of property rights as between private owners, when one is a public industry, in the limited sense pointed out in the Sanderson case, i. e., a "trifling inconvenience" of an individual must give way to "the necessities of a great public industry", when the latter clashes with a fundamental right of the public the industry must give way. And nothing is more fundamental than the right of the people to have the public streams from which they draw their water supply free from pollution. That right is supreme, for the simple reason that health and life itself depend on it. The people have the absolute right to have the "ancient purity" of their streams preserved against all other considerations. Nothing need be added except that in

the Sagamore case no community appeared as a party plaintiff. The bill was filed by a number of water companies and a railroad company, yet it was held as to all of them that there was involved a question of public use of the water, which entitled them to the injunctive relief sought. It was an incident in the case that after the litigation was commenced by the companies mentioned the Attorney General was permitted to intervene in the public interest, but that was not the basis upon which the ruling was made. It is also to be noted that the Supreme Court of the United States refused to grant a certiorari.

There are a number of cases in the books in which injunctions have been granted against coal companies, enjoining the further deposit of mine silt and refuse in streams of the Commonwealth, where the Attorney General did not appear at all as a party: Roaring Creek Water Co. v. Anthracite Coal Company of Pittsburg, 212 Pa. 115; Hindson v. Markle, 171 Pa. 138; Elder v. Lykens Valley Coal Co., 157 Pa. 490; Keppel v. Lehigh Coal & Navigation Co., 200 Pa. 649; and others. In the case first cited it was specifically stated in the court below, as appears from the record in the Supreme Court:

"It is true the Commonwealth through its legal representative has not been asked to intervene, but we cannot say this is material to the issue."

The granting of a preliminary injunction was affirmed by the Supreme Court in a short opinion without taking any note of the point raised. This would seem to be correct when the only question involved is that of pollution affecting the public use of a stream for domestic purposes. The public nuisance is one affecting the people directly in respect to a primary and natural right. No question of any sovereign right of the Commonwealth as such is involved in that situation. However, when it is claimed that there is an interference with the navigability of a river affecting

its use as "a public highway", there is involved an encroachment on the right of the Commonwealth, and in such cases the action must be brought in the name of the Commonwealth by the Attorney General. It is in that respect that the Commonwealth is a party plaintiff in the litigation before us, by the allegation in the bill, paragraph 37, that the "coal silt and coal dirt has accumulated to such an extent that it has elevated the bed of the Schuylkill River from four to fifteen feet, and in consequence navigation along said river is seriously interfered with and impeded and will be further impeded." However, if it should be deemed that the participation of the Attorney General is also required to support the claim of the city, he is on the record for that purpose as well.

The objection attempting to raise laches against plaintiffs is entirely baseless. Aside from the fact that the city's original case in the Supreme Court was held open, by special order of the court, for further proceedings therein when necessary, nothing is better settled in the law than the proposition that "there can be no prescriptive right to maintain an obstruction in the highway, or to pollute a stream to the detriment of the public": Pennsylvania R. R. et al. v. Sagamore Coal Co. et al., supra, p. 249; Commonwealth v. Yost, 11 Pa. Superior Ct. 323, 340; Sharon Borough v. Pennsylvania Co., etc., 44 Pa. Superior Ct. 526.

"The doctrine of laches does not apply so as to defeat injunctive relief from a continuing nuisance": 46 C. J. 777, and many other authorities. And as to the Commonwealth, laches cannot be raised where the public interest is involved.

As to the objections directed to the sufficiency of the bill as a whole, the defendants, "picking it to pieces", so to speak, fell into the error of treating the case as though it were an action for damages, and point out what in their view are inadequacies of statement, for such a purpose. It is unnecessary to pass on these many

interesting points because no damages are sought against any of the defendants. This is a bill to enjoin an alleged continuing public nuisance. The gravamen of the complaint is that defendants have and are presently permitting mine silt and refuse to flow into a public stream, by the operations of their mines or by erosion from culm banks previously built up by them. The State and the city just want to put a stop to this invasion of the public interest. It is quite unnecessary in this situation for plaintiffs to plead the time, manner, or extent of each of the operations of the several defendants which contribute to the resultant public nuisance, nor is it necessary for the State to plead the "extent" to which navigation has been impeded, in view of the allegation in paragraph 37 of the bill, supra, which pleads the "extent" of the elevation caused by the deposits in the bed of the river, because the "consequence" there pleaded is obvious, namely, that thereby "navigation along said river is seriously interfered with and impeded and will be further impeded", if additional such deposits are permitted to accumulate.

The whole argument of defendants on these points is based on a misconception of the very simple purpose of this proceeding. We have examined many of the bills filed in the large number of cases brought to our attention in which injunctive relief was granted in similar cases, and do not hesitate to state that the one filed here, considering the limited purpose of the litigation, is the most comprehensive we have found. Compare Fricke et al. v. Quinn et al., 188 Pa. 474.

As to the last objection, that the bill is defective for want of specifically-named parties, in that it fails to name or join trespassers as defendants and fails to aver that all the parties who caused the condition have been joined as defendants, it is sufficient to state that the city solicitor at the argument at the bar of the court made the statement, which likewise appears in

his printed brief, that plaintiffs have joined every defendant known to them who has in any way contributed to the pollution of the Schuylkill River by discharging mine refuse therein and if any of the 24 defendants will furnish plaintiffs with the names of additional parties who should be joined as defendants they will be joined. It is also open to any of the defendants to bring on the record, under Equity Rule 18, others who in their view should be added as defendants. As to trespassers or so-called "bootleggers" who may be unlawfully operating any of their properties in the coal regions, defendants are obviously in a much better position to disclose their identity, if there are any such, than are plaintiffs. It must be pointed out again that this is not an action for damages, but even in such a case, though there is no joint liability, recovery may be allowed against those defendants named on the basis that each contributed to the damage, though some of it may have been caused by persons not named as defendants: Pierce v. Lehigh Valley Coal Co., 40 Pa. Superior Ct. 566, affirmed in 232 Pa. 165. Of course, under the modern practice, those named may bring the others on the record. It is not sought here to impose any joint liability on defendants but rather to restrain each of them from continuing to participate in the creation of the nuisance complained of, so that the stream may be restored to its ancient purity. It is clear that the defendants were properly joined in this proceeding. See Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11. That was an action by an individual against a number of coal companies for injunctive relief, as well as for damages, on a cause of action very much like the one in hand, excepting that, as we have already pointed out, no claim for damages is made in the instant case. In the cited case the court held that plaintiff had a cause of action both for injunctive relief and for damages. For an illuminating discussion of the distinction between actions for dam-

ages and for injunctive relief in this class of cases, see Warren v. Parkhurst, 186 N. Y. 45, 78 N. E. 579, 6 L. R. A. (N. S.) 1149.

The right of plaintiffs, the State and the city, to proceed to a trial on the bill filed here is clear. We find no merit in any of the preliminary objections.

The preliminary objections are overruled and leave is granted to defendants and each of them to file answers to the bill in 30 days, and in default thereof plaintiffs may have judgment pro confesso.